OPINION OF THE COURT
William H. Bristol, J.
Important legal principles are often hidden in “unimportant” criminal charges. This case is such an example. Enshrouded within the cloak of criminal procedure technicalities that form the instant motion there exists a set of fundamental legal interests in conflict with each other: An individual’s right to say what is on his or her mind versus an individual’s right to be left alone.[1] This court must decide whether the instant criminal information states facts which could show that the defendant exceeded his right to free speech and, by his words, crossed over into the realm of unlawful conduct. Specifically, does this information contain allegations of fact which support or tend to support the Penal Law violations of harassment?
FACTS
Jefferson Avenue, Rochester, New York. 3:00 a.m. A lone white suburban male backs his expensive foreign car 50 feet along the curb and speaks to three young black women who are walking on the sidewalk. In a few brief moments of conversation the male invites the females to accompany him to his suburban home (his wife is away in London) to share with him a bottle of 50-year-old wine. Finding none of the pedestrians to be oenophiles and, therefore, not impressed with his offer, he offers, in addition, $100 for their companionship.
*85 Observing this from afar is Rochester Police Officer A. P. Iacutone. Understandably curious, Officer Iacutone approaches the pedestrians to inquire as to the nature of this early morning street encounter. As he approaches, the male driver departs.
Having learned the above-stated facts, having heard the pedestrians describe their opinion that the driver had mistakenly believed them to be prostitutes and having listened to their feelings of indignation and resentment, Officer Iacutone apprehends and arrests the driver on charges by the pedestrians of two counts of harassment contrary to Penal Law § 240.25 (3) and (5).
Defendant applies to this court for an order dismissing the accusatory instrument. He claims that the above-recited facts, which form all of the factual allegations in the accusatory instrument, even if proved at trial beyond a reasonable doubt to be true, do not support (or tend to support) the charges brought, i.e., they do not amount to “harassment” as that term is defined by Penal Law § 240.25 (3) or (5).
LAW
For a person to be guilty of these harassment charges, the People must plead and prove:
1. That, with the intent to harass, annoy or alarm another person, the defendant followed a person in or about a public place (Penal Law § 240.25 [3]); and,
2. That, with the intent to harass, annoy or alarm another person, the defendant engaged in a course of conduct or repeatedly committed acts which alarmed or seriously annoyed such other person and which served no legitimate purpose (Penal Law § 240.25 [5]).
In order for a criminal information to be jurisdictionally effective, it must “contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges.” (CPL 100.15 [3].) Such a statement is a “nonwaivable jurisdictional predicate to a valid criminal prosecution”. (People v Miles, 64 NY2d 731, 732; see also, People v Hall, 48 NY2d 927, 928; People v Case, 42 NY2d 98, 99; CPL 100.40 [1].)
For the following reasons, the court holds that this criminal information does not allege facts that support or tend to support the offenses charged.
Penal Law § 5.00 abolished the common-law rule requiring strict construction of penal codes. It replaced it with the requirement that the Penal Law be interpreted “according to the fair *86 import of their terms to promote justice and effect the objects of the law”. (Penal Law § 5.00.) Chief Judge Cooke held in People v Ditta (52 NY2d 657, 660 [1981]) that: “Although this rule obviously does not justify the imposition of criminal sanctions for conduct that falls beyond the scope of the Penal Law (e.g., People v Sansanese, 17 NY2d 302, 306; People v Wood, 8 NY2d 48,51), it does authorize a court to dispense with hypertechnical or strained interpretations of the statute (see, e.g., People v Abeel, 182 NY 415, 420-422). Thus, conduct [which] falls within the plain, natural meaning of the language of a Penal Law provision may be punished as criminal.”
The key to establishing the violation of harassment is evidentiary facts which support or tend to support an intent to annoy, harass or alarm. For unlike Penal Law §§ 240.20, 240.21, 240.05, 240.06 (to cite but a few examples), which all proscribe reckless creation as well as intentional creation of certain eventualities, a harassment conviction requires pleading and proving that it was, indeed, the intent of the defendant to harass, alarm or annoy. (People vHall, 48 NY2d 927 [1979], supra.) The statute does not “gouge * * * criminality by the impressions made on an annoyed or disgruntled citizen.” (People v Harvey, 307 NY 588, 592 [1954].)[2] Rather, the “language or conduct [must] by its nature [be] of a sort that is a substantial interference with (our old friend) the reasonable man.” (People v Harvey, supra, at p 592.)
That the facts alleged may describe annoying behavior is not enough to support prosecution of the charge and thereby invest the court with jurisdiction. In a free society, such as ours, citizens are subjected to a degree of annoying behavior which, most likely, in a police State would not be tolerated. But merely because a person behaves in an immature, immoderate, rude or patronizing manner which annoys another is not enough to cause the actor to suffer criminal sanctions. He must intend that such behavior annoy, harass or alarm another. This court will condone neither poor judgment nor bad taste. But, by the same token, this court will not criminalize such behavior where to do so would exceed the fair import of the statutory language defining the offense of harassment.
Do the recited facts support the charge that the defendant followed the complainants in a public place with the intent of *87 harassing or alarming them? Clearly they do not. The court is not so naive as to believe (or, perhaps the court has just become cynical) that the defendant’s purpose was solely to seek out some sort of platonic companionship. Perhaps that was the defendant’s intent. Perhaps not. But, in either event, no reasonable reading of these facts support the conclusion that the defendant’s intent was to annoy, harass or alarm the complainants. For good or ill motive, a fair reading of the facts support only the conclusion that the defendant sought female companionship. Such is not, usually, gained by intentionally annoying, harassing or alarming behavior. That the conduct and the language did, in fact, create annoyance is both understandable and reasonable. But it is neither unlawful nor criminal. Rather, such annoyance is a price that we all pay for the freedom that we enjoy in this society.
Do the recited facts tend to support the charge that the defendant, with the intent to harass, alarm or annoy engaged in a course of conduct or repeatedly committed acts which alarmed or seriously annoyed another person and which served no legitimate purpose?
They do not.
First, there are no allegations of fact which tend to support the belief that the complainants were, indeed, alarmed or seriously annoyed. Obviously, they were offended by what they reasonably believed to be, at best, a patronizing attitude and insulting conduct. But none of the facts tend to support the idea that they were seriously annoyed or alarmed. In fact, the complainants’ verbal retort “go home to your wife!” was more astute, indeed, more cutting, than the words addressed to them by this defendant.
Even if such facts could be viewed as supporting the element of “serious annoyance or alarm”, the other facts recited do not allege a “course of conduct or repeated acts” as is contemplated by the statute. One brief conversation does not establish a course of conduct. (People v Hotchkiss, 59 Misc 2d 823 [County Ct, Schuyler County 1969].)
Finally, the court is convinced, as earlier recited, that the complaint fails to allege facts of an evidentiary nature tending to support the elements of intent. Merely reciting the words “thereby evincing an intent to annoy, harass or alarm” while necessary to the effective nature of the instrument (People v Hall, supra) is not enough. In addition, evidentiary facts supporting the intent element must be alleged. There are none.
*88 For the above reasons, this court holds that the accusatory instrument is defective and, therefore, it does not invest the court with jurisdiction. Accordingly, the charges against the defendant are dismissed.

. A person’s right to be left alone, i.e., to privacy, is a fundamental right which is derived from the US Constitution. Such right exists within the “penumbras, formed by [the] emanations from [Bill of Rights] guarantees that help give them life and substance.” (Griswold v Connecticut, 381 US 479, 484 [1965]; see generally, 4 Harv L Rev 193, 220.)

. People v Harvey (307 NY 588 [1954]) construed former Penal Law of 1909 § 720 (as amended by L 1923, ch 642, § 1, as amended by L 1938, ch 294). This section was the forerunner of the present Penal Law § 240.25 (as added by L 1965, ch 1030, as amended by L 1967, ch 791, § 41). Harvey’s logic and analysis apply validly to the instant case.