*673 OPINION OF THE COURT
Fred D. Weinstein, J.
The defendant, Karen Henderson, is charged with aggravated harassment in the second degree, a violation of Penal Law § 240.30 (1) which provides:
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
“(1) Communicates or causes a communication to be initiated by mechanical or electronic means or otherwise, with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm”.
The information alleges the defendant committed the offense of aggravated harassment in the second degree by sending a letter to another person in which she stated “Be attacked in a violent and brutal way”, “I know of the evil orders you have”, “You m-f-!!! You should be killed instantly!” The recipient of the letter, an elected official, provided a supporting deposition in which he stated “After reading the letter [from the defendant] which contained threats to kill me, I was convinced that my life might be in danger as well as my family members”.
Presently, the defendant has moved to dismiss the information on the basis of her contention that Penal Law § 240.30 (1) is unconstitutional. Specifically, in reliance on People v Dupont (107 AD2d 247 [1st Dept 1985]), the defendant contends Penal Law § 240.30 (1) is vague and overbroad. The defendant argues that even if Dupont is not controlling, the statute is unconstitutional as applied in this case because it would criminalize the exercise of free speech in connection with a communication to an elected official. The defendant specifically contends that she was simply voicing her objection to a position taken by the elected official with respect to welfare reform cuts in the county budget. In her motion, the defendant also seeks to suppress statements identified in a CPL 710.30 statement and to preclude the use of defendant’s prior criminal record, if any, or any prior bad acts at trial.
Penal Law § 240.30 and several of its subdivisions have been the subject of several prior constitutional challenges. In People v Smith (89 Misc 2d 789 [App Term, 2d Dept 1977], cert denied 434 US 920 [1977]), for example, the defendant therein appealed a conviction of aggravated harassment on grounds that *674 the statute was unconstitutionally vague and overbroad. The defendant had been convicted under Penal Law § 240.30 (1) and (2) because of 27 phone calls made to the White Plains Police Department within a span of 3 hours and 20 minutes, notwithstanding repeated advice to the defendant that such calls were tying up the phone lines. The Appellate Term upheld the constitutionality of the statute and reasoned, in part, as follows (at 791-792): “we conclude that subdivision 1 was intended to include communications which are obscene (see, e.g., Miller v California, 14 US 15), threats which are unequivocal and specific (see, e.g., United States v Kelner, 534 F2d 1020), communications which are directed to an unwilling recipient under circumstances wherein ‘substantial privacy interests are being invaded in an essentially intolerable manner’ (Cohen v California, 403 US 15, 21, supra; cf. 47 US Code, tit 47, § 223, subd [1], pars [B]-[D]; see, also, Rowan v Post Office Dept., 397 US 728, supra), communications ‘which by their very utterance * * * tend to incite an immediate breach of the peace’ (Chaplinsky v New Hampshire, 315 US 568, 572; see Gooding v Wilson, supra) and written communications intended to simulate court process of any kind. The communication must, of course, also be made ‘in a manner likely to cause annoyance or alarm’ and ‘with intent to harass, annoy, threaten or alarm another person.’ As so construed, subdivision 1 does not, in our opinion, suffer from any constitutional infirmity.”
In reaching its decision quoted in part above, the Smith court held that the defendant’s conduct was squarely within the “hard core” of the statute’s proscriptions and therefore the harassment statute could not be challenged on vagueness grounds as applied to the defendant. (People v Smith, supra, at 791; Broadrick v Oklahoma, 413 US 601.) The core of the statute as explicated by the Smith court and as it related to the defendant’s conduct therein was the proscription against communication, even if unobjectionable in content, which is directed to an unwilling listener under circumstances wherein “ ‘substantial privacy interests are being invaded in an essentially intolerable manner’ [citation omitted]”. (People v Smith, at 791.)
In People v Dupont (supra), the case relied upon by the defendant in this case, the defendant was convicted under Penal Law § 240.30 (1) for distributing a magazine over several months that contained cartoons and pejorative articles about the complainant and which accused the complainant of homosexuality and sharp or dishonest business practices. The *675 magazine had been distributed by the defendant in various locations where the complainant was attending private social functions. The Appellate Division concluded that the acts complained of did not constitute harassment and the application of the harassment statute to defendant’s acts would violate the defendant’s rights to free speech. The Court noted that historically the harassment statute “in its various formulations, including the present codification, does not appear to have been relied upon as the basis for punishing any but annoying and harassing communications transmitted directly to the complainant” (People v Dupont, supra, at 252 [emphasis supplied]). In contrast to the holding in Smith (supra), the Dupont Court noted the activities of the defendant therein did not involve direct communication with the complainant, interference with privacy or use of or tying up of phone lines. Under such circumstances, the Court noted that although the statute was found to be constitutional in Smith, it was unconstitutional in its application to the defendant in Dupont because it involved conduct which was “merely the distribution of literature, offensive though it may be. Such conduct is plainly not within the ‘hard core’ of the statute’s proscriptions.” (People v Dupont, supra, at 252.)
In the instant case, unlike Dupont (supra), the alleged conduct did involve direct communication to an elected official in the form of a letter sent to the official at his address listed in the telephone book. Moreover, the content of the letter as described in the information was not in the nature of a political grievance but was extremely threatening in tenor. The statements that “[y]ou should be killed instantly” and “[b]e attacked in a violent and brutal way” are clearly not protected forms of speech. Such statements fall within the category of speech that is not subject to constitutional protection. As was stated by the United States Supreme Court in Chaplinsky v New Hampshire (315 US, supra, at 572): “There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or ‘fighting words’ — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace”.
Against this background, it is apparent that the letter purportedly sent by the defendant was not only profane but contained statements that were extremely inflammatory and, by any measure, threatening. Additionally, although the recip *676 lent of the letter was an elected public official, even an elected official has a substantial privacy interest with respect to communications at his residence. Indeed, in Smith (supra), the police were deemed to have a substantial privacy interest which was violated by repeated phone calls that were unrelated to official police business. The content of the defendant’s letter and the forwarding of such a letter to the residence of a public official, taken together, are clearly within the “hard core” of the proscribed activities of the harassment statute. As such, this court concludes that the statute is constitutional in its application to the alleged conduct of the defendant.*
The defendant also seeks to suppress statements purportedly made by the defendant and identified in a CPL 710.30 notice. In response, the People have consented to the conduct of a Huntley hearing, and this court will accordingly schedule a Huntley hearing forthwith.
With respect to that branch of the defendant’s motion which seeks to preclude the use of evidence of any prior convictions or prior bad acts, this court will schedule a Sandoval hearing as well as a hearing pursuant to CPL 240.43 to rule on the admissibility of any prior bad acts by the defendant.
Finally, the court cannot grant the defendant’s request for leave to make additional motions. Such an application is, at best, premature and is denied without prejudice to any subsequent application upon good cause shown.

 Subsequent to the submission of the defendant’s dismissal motion, the defendant’s counsel forwarded a copy of the decision in Schlagler v Phillips (985 F Supp 419 [SD NY 1997]) as further support for the defendant’s position. In Schlagler, the court relied upon the decision in Dupont (supra) to conclude the harassment statute was unconstitutionally applied to prosecute an individual solely on the basis of the content of his speech. The Schlagler court, however, expressly declined to consider the constitutionality of the statute when used, as it was in the Smith case, to prosecute an individual because of a direct communication which infringes upon the recipient’s privacy interest. (See, Schlagler v Phillips, 985 F Supp, at 421.)