OPINION OF THE COURT
Ira J. Raab, J.
“Sticks and stones may break my bones, but words will never harm me.” (Children’s taunt, Northrop, Folk Phrases [1894].) This case involves two fundamental legal principles in conflict with each other: a person’s right to say what is on his or her mind, versus another person’s right to be left alone. This court *303 must decide whether the instant criminal information alleges facts which could show that the defendant exceeded his right to free speech and, by his words, crossed over into the realm of unlawful conduct. The words uttered by defendant telemarketer in doing his single telephone solicitations with each of two complainants who declined the sales offer constitute protected speech under the First Amendment of the Constitution of the United States and article I, § 8 of the Constitution of the State of New York. The motion made to dismiss the information for insufficiency is granted as the words “dumb nigger,” though reprehensible, improper and uncalled for, do not rise to the level of aggravated harassment as defined by Penal Law § 240.30 (1).
The defendant, a home improvement telemarketer, is accused of two counts of aggravated harassment in the second degree, a class A misdemeanor, in violation of Penal Law § 240.30 (1), in that he made two separate telephone calls to each of the complainants for the purpose of selling home improvement items to them, and, when such services were declined, he called each one a “dumb nigger,” and hung up.
The defendant claims that his comments constitute protected speech under the First Amendment’s right of free speech and expression, and that an individual cannot be punished for biased thought or expression. Further, he contends that this case should be dismissed for legal insufficiency because there was no continuing series of calls evincing an intent to harass. The defendant seeks an order dismissing the accusatory instruments filed against him as being insufficient on their face, upon the ground that the allegations of the offenses charged do not constitute a violation of the statute. (CPL 100.15 [3]; 100.40 [1]; 170.30 [1] [a]; 170.35 [1] [a].)
The People claim that the informations should not be dismissed because they are sufficient, and thus there are no constitutional violations. The People contend that the defendant calling each complainant a “dumb nigger” is not protected speech because the State has an interest in protecting the rights of victims and discouraging crimes against them because of their race. Further, the People argue that there was intent on the part of the defendant to harass because this was not a single isolated incident, but rather, it was two separate incidents involving two separate complainants, although only one solicitation call was made to each complainant.
The determination of whether or not the information should be dismissed for insufficiency requires a careful analysis of the *304 circumstances under which the defendant’s statements were made.
The court makes the following findings of fact and conclusions of law:
Findings of Fact
The defendant is charged with two counts of aggravated harassment in the second degree for two separate incidents that occurred on June 17, 1998. The defendant was employed by a construction company as a telemarketer. His job was to do “cold-calling” to sell home improvement services. He telephoned each complainant in an attempt to sell such services. Both complainants separately refused to purchase home improvement services from defendant. When they did so, he called each one a “dumb nigger” and hung up. There are no further allegations of threatening or coarse language during the short duration of the respective phone calls.
On June 23, 1998, the defendant admitted to Detective David M. Ohayon that he did telephone each complainant and that he did call each complainant a “dumb nigger.”
The defendant is a 49-year-old male with significant mental problems, who has been seen by a psychiatrist for many years and is under medication. In a letter from the defendant’s therapist, Elise Thompson, she states that this is not defendant’s usual manner of behavior, that he was under pressure the day he spoke with each complainant, and that the words were spoken out of frustration. Defendant’s employment has always been in the telemarketing field, with no prior complaints from customers.
The Constitutions
The First Amendment of the United States Constitution guarantees “the freedom of speech.” Article I, § 8 of the New York State Constitution provides:
“Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.”
The Statute
Penal Law § 240.30 (1) provides:
“A person is guilty of aggravated harassment in *305 the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
“1. Communicates, or causes a communication to be initiated by mechanical or electronic means or otherwise, with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm.”
Discussion
Before determining whether the use of the phrase “dumb nigger,” standing alone, is statutorily permissible, the court must review the aggravated harassment statute itself, the primary purpose behind the statute, and any exceptions that have been carved out of the statute.
In order to convict someone under this statute, defendant must initiate a communication with the requisite intent to harass, while lacking a legitimate purpose for the communication. (People v Amalfi, 141 Misc 2d 940 [Rochester City Ct 1988].) That was not the crux of the conversation here. In this case, the defendant called the complainants for a legitimate business purpose and the conversations ended up with the words “dumb nigger.” The calls were not “initiated” for the purpose of harassment, annoyance, threats or alarm, but rather for the legitimate purpose of soliciting business.
Defendant argues that the sufficiency of the accusatory instrument does not meet the standard required by the statute. “An information is sufficient on its face if it contains non-hearsay allegations of an evidentiary nature that provide reasonable cause to believe the defendant committed every element of the offense charged.” (People v Yablov, 183 Misc 2d 880, 882 [Crim Ct, NY County 2000]; People v Oliveri, NYLJ, Sept. 20, 1999, at 29, col 5 [Crim Ct, NY County].)
The defendant relies on People v Zullo (170 Misc 2d 200 [Nassau Dist Ct 1996]) because it alleged merely a single incident, and there was not a continuing series of calls constituting a series of events evincing defendant’s intent to harass, threaten or alarm another person. (People v Shack, 86 NY2d 529 [1995].)
In general, one isolated incident is not legally sufficient to sustain a conviction for aggravated harassment. (People v Chasserot, 30 NY2d 898 [1972].) However, criminal liability may be imposed for making a single telephone call only if the call is placed with requisite intent to harass, annoy, threaten *306 or alarm, where there was a lack of legitimate purpose for the call in the first instance. (People v Liberato, 180 Misc 2d 199 [Crim Ct, NY County].) Had the defendant called a complainant without the solicitation of a sale, and simply said “dumb nigger” and hung up, that would show intent to harass. The Legislature intended to proscribe repeated calls to a residence that might drive a person to distraction. Telephone calls may be considered harassment when there is a barrage of threatening telephone calls by the defendant at all hours of the day and night. (People v Katz, 135 Misc 2d 857 [App Term, 1st Dept 1987].)
Thus, despite the statutory reference to a single telephone call, the statutory provision and its history readily permit characterization as a continuing offense over time. (People v Shack, supra.) Defendant, who made just one call with a brief solicitation to each complainant, does not establish a course of conduct. There was no continuing series of calls indicating intent on the part of the defendant to harass the complainants, nor was there any allegation that one single business solicitation evinced a lack of legitimate purpose. In the absence of the intent, there is no crime, even if the complainants felt harassed, annoyed, threatened or alarmed as a result of the defendant’s telephone calls. (People v Amalfi, supra.) By including a specific intent element in the statute, the Legislature has removed the possibility that a defendant could be unaware of his criminal conduct. This specific intent element also removes the possibility that criminal liability would be imposed based on the unascertainable sensitivities of the victim. (People v Shack, supra.)
It is the obligation of courts to construe statutes to preserve constitutionality. (People v Dietze, 75 NY2d 47 [1989]; People v Smith, 89 Misc 2d 789 [App Term, 2d Dept 1977].) First Amendment freedoms must be given weighty consideration in balancing them against the interests underlying challenged statutes. (People v Dupont, 107 AD2d 247 [1st Dept 1985].) If a statute impedes First Amendment rights, it is unconstitutional on its face. The First Amendment to the United States Constitution prohibits Congress, and through the Fourteenth Amendment prohibits States, from abridging the right to free speech. Free expression of opinion cannot be abridged, however false, unpopular, or even offensive the opinion may be. The State lacks the power to punish the choice of words used to express opinions, however vulgar, insulting or even painful the words may be. (People v Cerbone, 113 Misc 2d 740 [Harrison Town *307 Ct, Westchester County 1982].) Constitutionally guaranteed liberties are to be accorded a most liberal construction. (Matter of Figari v New York Tel. Co., 32 AD2d 434 [2d Dept 1969].) Such freedoms may be limited only if there is a compelling State interest. The fact that certain modes of expression may be “annoying” to others does not require an individual to forfeit his constitutional right under the First Amendment to make those expressions or assertions. The deterrent effect on free speech must be no greater than is absolutely necessary to foster the compelling interest necessitating the statute. (People v Dupont, supra.)
Penal Law § 240.30 is intended to include communications which are obscene, communications which are directed to an unwilling recipient under circumstances wherein “ ‘substantial privacy interests are being invaded in an essentially intolerable manner,’ ” and communications “ ‘which by their very utterance * * * tend to incite an immediate breach of the peace.’ ” (People v Smith, 89 Misc 2d, supra, at 791-792.) The communication must also be made “ ‘in a manner likely to cause annoyance or alarm,’ ” and “ ‘with intent to harass, annoy, threaten or alarm another person.’ ” (Id., at 792.) It also includes threats which are unequivocal and specific. (People v Henderson, 177 Misc 2d 672 [Briarcliff Manor Just Ct, Westchester County 1998].) The communications between defendant and complainants do not fit into any of these circumstances and is therefore not prohibited by the statute. Defendant’s statement contained no threats, nor invaded complainants’ privacy in an intolerable manner. The comment made by the defendant to the complainants, although offensive and uncalled for, is a mere opinion which is not “likely to cause annoyance or alarm” within the meaning of the statute.
In People v Dietze (supra), the Court held that vulgar, derisive and provocative language is constitutionally protected speech. Speech is often “abusive” — even vulgar, derisive and provocative — and yet, is still constitutionally protected under the State and Federal constitutional guarantees of free expression, unless it is much more than that. Unless speech presents clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized. Any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace. (People v Cerbone, supra.)
Rude and angry words are not enough to constitute aggravated harassment. Not every scurrilous or unsavory com *308 munication concerning an individual, no matter how repulsive or in what degree of poor taste, necessarily constitutes criminally harassing conduct. (People v Dupont, supra.) Words must be legally obscene or “fighting words” in order to be exempt from the category of protected speech. (People v Morgenstern, 140 Misc 2d 861 [Rochester City Ct 1988].) While not every resort to epithet or personal abuse will be viewed as communication safeguarded by the Constitution, the “fighting words” exception will apply where the expression of ideas was accomplished in a manner likely to cause a breach of the peace. (People v Cerbone, supra.) Defendant’s comment was neither a violent nor a potentially violent act.
Even if the words are imprudent, thoughtless, tasteless, or just plain angry, as in this case, so long as they were not legally obscene, or fighting words, and did not intrude without a legitimate purpose into the privacy of one’s home, they are constitutionally protected. Taken in context, “nigger” is not equivalent to “fighting words.”' It is only where words are uttered as a deliberate challenge to a breach of the peace, with communication of thought a mere incidental concomitant, that a prosecution may lie. (People v Cerbone, supra.)
To pass constitutional muster, the offending words must be calculated to provoke a reasonable person into an immediate and violent breach of the peace and have no other purpose. (People v Cerbone, supra.) The language or conduct must, by its nature, be of a sort that is a substantial interference with the reasonable person. Annoying behavior is not enough to support a charge of harassment. While neither poor judgment nor bad taste is condoned by the court, the court will not criminalize such behavior where to do so would exceed the fair import of the statutory language defining the offense of harassment. (People v Malausky, 127 Misc 2d 84 [Rochester City Ct 1985].)
The evidence in this case fails to establish that defendant uttered the words “dumb nigger” with the intent that such language would provoke a reasonable person into an immediate and violent breach of peace, as required for defendant to be convicted under the aggravated harassment statute. In People v Todaro (26 NY2d 325 [1970]), the Court held that mere words uttered in anger and annoyance are not enough to be considered harassment under the statute. More is necessary to confirm the defendant’s criminal nature of the charged act. Merely because a person behaves in an immature, immoderate, rude, or patronizing manner which annoys another person is not *309 enough to cause the conduct to suffer criminal sanctions. (People v Morgenstern, supra.) As required by statute, a defendant must manifest an intent to harass, annoy, threaten or alarm. (People v Todaro, supra.) Something more must be established than that a person, angered or annoyed, expressed his anger or annoyance in terms of apparent bravado, particularly in the absence of proof of any farther words or acts tending to confirm the criminal nature of the act charged. (People v Price, 178 Misc 2d 778 [Crim Ct, NY County 1998].)
In this case, the statute should be given a clear and definite construction limiting its reach to constitutionally proscribable fighting words. (People v Dietze, 75 NY2d 47, supra.) Defendant was not charged with making threats of physical harm or other conduct which can be characterized as anything more than angry verbal outbursts. While the remarks made by the defendant were crude and even insulting to the recipients, they are nevertheless constitutionally protected speech. Defendant’s words do not fall within the scope of constitutionally proscribable expression. His statement was not confirmed by any other words or acts showing that it was anything more than a crude outburst after being turned down. Defendant called each complainant a “dumb nigger” apparently out of frustration. However, venting anger and frustration by hurling insults may be unpleasant and crude, but that, in and of itself, is not harassment, but simply a natural human reaction and an exercise of First Amendment rights. (People v Ryder, NYLJ, May 19, 2000, at 31, col 6 [New Rochelle City Ct, Westchester County].) While genuine threats of physical harm fall within the scope of the statute, such an outburst, without more, does not. (People v Dietze, supra.)
In People v Rivera (144 Misc 2d 565 [Crim Ct, NY County 1989]), defendants yelled to complainants “Nigger Bitches, we should take your earrings,” and chased them across the street into a building. The statement, followed by the act of chasing the complainants, is sufficiently threatening to support the charges. The meaning of the words should be considered in light of the entire incident. There was something more than mere speech. There was a threat of force. There was no such threat in the within case.
In People v Malausky (127 Misc 2d 84 [Rochester City Ct 1985], supra), the court held that merely reciting in the accusatory instrument the words “thereby evincing an intent to annoy, harass, or alarm,” while necessary to the effective nature of the instrument, was not sufficient to establish intent *310 to harass. That facts alleged may describe annoying behavior is not enough to support prosecution of a harassment charge. Merely because a person behaves in an immature, immoderate, rude, or patronizing manner which annoys another is not enough to cause the actor to suffer criminal sanctions. Evidentiary facts supporting the intent element must be alleged, and there are none in the present case.
The People’s reliance on People v Cirruzzo (53 Misc 2d 995 [Nassau Dist Ct 1967]) is misplaced. The court in that case held that prohibiting the use of a telephone for the purpose of using “obscene language” was not so vague and indefinite. However, Cirruzzo {supra) involves a different statute, Penal Law former § 555. Therefore, the Cirruzzo argument is not to be considered here.
The People further rely on People v Dinan (118 Misc 2d 857 [Long Beach City Ct, Nassau County 1983]) and People v Miccio (155 Misc 2d 697 [Crim Ct, Kings County 1992]). Dinan (supra) involved a threat “to get” the complainant, coupled with the words “F— Jews.” There was no threat involved in the within action. Miccio (supra) involved a physical attack on the complainants, coupled with the words “We don’t want any Spies or Niggers in the neighborhood.” There was no physical attack in the within action. Thus, neither cited case applies to the facts in the within case.
Conclusion
The expression of controversial and unpopular views is precisely what is protected by both Federal and State Constitutions. The mere fact that defendant, in anger or frustration, used colorful language in registering displeasure with complainants’ refusal to purchase the home improvement services does not render the communication criminal within the ambit of the Penal Law.
The statement, “dumb nigger,” made by defendant to complainants at the conclusion of the business solicitation telephone conversations does not rise to the level of the crime of aggravated harassment under Penal Law § 240.30 (1). Such statement, under the circumstances alleged, is protected by the legal principle of freedom of speech guaranteed by the First Amendment of the United States Constitution and by article I, § 8 of the New York State Constitution.
*311 Viewing the facts and circumstances of this case in a light most favorable to the People, it is clear that the accusatory instruments must be dismissed as a matter of law.