Suarez, J.
(dissenting). I respectfully dissent, in part. While I agree with the majority that the conviction for tampering with a witness in the fourth degree (Penal Law § 215.10) cannot *67 stand, as there was no action or proceeding pending at the time of defendant’s telephone calls, defendant’s recorded telephone conversation, his testimony, and the testimony of the complainant provide proof beyond a reasonable doubt of his intent to harass, annoy, threaten or alarm the complaining witness pursuant to Penal Law § 240.30 (1).
Penal Law § 240.30 (1) provides in relevant part: “A person is guilty of aggravated harassment . . . when, with intent to harass, annoy, threaten or alarm another person, he . . . communicates with a person ... by telephone ... in a manner likely to cause annoyance or alarm . . . .”
Defendant Roy Silverberg, a law student, knew that complainant Keith LePack, an attorney, would most likely be the principal witness in the criminal proceeding stemming from the arrest of Tracy Polansky, defendant’s former girlfriend, for having made harassing telephone calls to the complainant. Defendant threatened complainant with criminal arrest on assault charges and disciplinary proceedings with the grievance committee in exchange for complainant dropping the charges against Polansky.
The conversation between defendant and complainant, tape recorded by complainant, was admitted into evidence. The parties provided, in their briefs, substantially the same transcription of the conversation. (Defendant’s brief at 4-5; People’s brief at 4-5.)
“lepack: Hold on.
“silverberg: Okay.
“lepack: Hold on. Now, Roy, I am not supposed to talk to you.
“silverberg: Listen to me, I’m giving you a chance, Keith.
“lepack: What kind of chance?
“silverberg: Because, listen Keith, I don’t want to go this way with you.
“lepack: Go which way?
“silverberg: I have two witnesses that said that you assaulted me in Southampton. I have other people that you — said you assaulted me.
“lepack: Okay.
“silverberg: Okay. I can have you arrested. I don’t want to do that. I don’t want to go that way. I have two letters written to the grievance committee that *68 you used the legal system to harass people.
“lepack: Okay.
“silverberg: I don’t want to do this I. . . Listen, if you want to go that way, it’s fine. We were friends once. Okay, I don’t know what, ya know, provoked you to do, uh, to hit me like that. But listen, I don’t want to go this way. I figure if you could drop the charges, I don’t have to do that. Now they told me all I have to do is go to the police station. They’re open 24 hours, I have the dates, I have the witnesses, and I could do that. Or maybe we could work something out. That’s why I’m calling you. It’s a courtesy call.
“lepack: Goodbye.
“silverberg: Okay. Don’t do it.” (Transcript at 59-GO.)
Defendant admitted his purpose in calling LePack was to prevent him from testifying against Polansky. On cross-examination, defendant was asked:
“Q You called him [LePack] so that he would never testify against Tracy, [Polansky], so that the case would go away and be dismissed?
“A That would be the objective of the conversation to help Tracy out.” (Transcript 216-217.)
The recorded telephone conversation, complainant’s testimony, and defendant’s testimony on cross-examination provide overwhelming proof that defendant’s threats of criminal assault charges and attorney disciplinary grievance committee action, intended to harass, annoy, threaten or alarm LePack in a manner likely to cause him annoyance or alarm. Defendant’s threats and ultimatum (“the police station. They’re open 24 hours . . .”) to drop the charges against Polansky or face criminal charges and attorney disciplinary proceedings is damning. When viewed in the light most favorable to the prosecution, there exists legally sufficient evidence to support the conviction of aggravated harassment in the second degree. (People v Contes, 60 NY2d 620 [1983]; Jackson v Virginia, 443 US 307 [1979].)
The majority’s characterization of the recorded telephone conversation as a “single,” an “isolated,”[1] “brief,” “courtesy” telephone call “spoken in measured tone and neither vulgar nor *69 abusive in content,” distorts the record and attempts to color the facts in a light most favorable to the defendant. His intention to threaten LePack in a manner likely to cause annoyance or alarm, motivated by his intention to induce LePack to avoid testifying against Polansky, is supported by a record which establishes two telephone conversations accompanied by threats, substantial evidence of animosity between long-time friends turned adversaries, and his admission that his purpose in calling LePack was to prevent him from testifying against Polansky. Defendant’s acquittal of the count of second degree aggravated harassment with respect to the second call testified to by Le-Pack does not mean that the call did not occur, nor does it require that the trier of facts not consider the second call in evaluating defendant’s guilt with respect to the first call, as the majority seems to suggest. (See, People v Rayam, 94 NY2d 557, 562 [2000].) Likewise, this court is not prevented from considering the evidence that the second call took place and the content thereof, despite our knowledge that defendant was acquitted on the count related to that call.
The majority’s reliance on People v Mangano (100 NY2d 569 [2003]), People v Taylor (2002 NY Slip Op 50023 [App Term, 1st Dept 2002]) and People v Livio (187 Misc 2d 302 [Nassau Dist Ct 2000]) as “relevant precedent” is misplaced. Defendant’s conduct in this case is clearly distinguishable from that of the defendant in each of those cases. Defendant in People v Mangano (at 570) made five telephone calls to an answering machine in which she “rained invective on two village employees, wished them and their families ill health, and complained of their job performance, as well as tickets she had received.” The Court of Appeals wrote “defendant’s messages were crude and offensive but made in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public. We cannot agree with the People’s argument that the appellant’s messages fall within any of the proscribable classes of speech or conduct.” (Id. at 571.) Here, the defendant spoke with the complainant (not an answering machine) who almost immediately advised the defendant that he was not supposed to talk to the defendant (presumably based upon an existing order of protection). The defendant in People v Taylor made one telephone call to the complainant who immediately hung up *70 upon recognizing defendant’s voice and a second telephone call in which he stated, “She is my daughter also,” a reference to the child of defendant and complainant. This court wrote “The two isolated phone calls complained of, neither of which was vulgar, derisive or threatening in content, were insufficient to establish beyond a reasonable doubt an intent on defendant’s part to ‘harass, annoy, threaten or alarm’ the complainant.” (Id.; emphasis supplied.) The defendant’s conversations with LePack in this case clearly were “threatening in content.” The defendant in People v Livio was a telemarketer who called two persons to sell them services; made vulgar derisive remarks when the persons refused to buy; and then immediately hung up. The trial court incorrectly held that to convict someone under Penal Law § 240.30 (1) “defendant must initiate a communication with the requisite intent to harass, while lacking a legitimate purpose for the communication. (People v Amalfi, 141 Misc 2d 940 [Rochester City Ct 1988].)” (Id. at 305; emphasis supplied.) The Legislature did not impose the requirement of lacking a legitimate purpose for the communication, nor does People v Amalfi stand for that proposition. No valid reason is presented by the majority herein to add such a requirement to the statute. I find defendant’s statements were “threatening in content” and established beyond a reasonable doubt his intent to harass, annoy, threaten or alarm LePack.
I disagree with the majority’s finding that the conviction of aggravated harassment in the second degree “was not based on legally sufficient evidence.” (Majority op at 65.) Judge Bellacosa explained the duty of an intermediate appellate court in reviewing the legal sufficiency of the evidence, writing “For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]) and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.” (People v Bleakley, 69 NY2d 490, 495 [1987]; see also, People v Ficarrota, 91 NY2d 244, 248 [1997].) Although I agree with the majority that the recorded telephone call “was spoken in measured tone,” I disagree with the majority’s adoption of the defendant’s label of the call as a “courtesy.” I also disagree with the majority’s find *71 ing that the defendant did not “unequivocally threaten the complainant.”[2] The trier of fact could certainly have reasonably concluded that the defendant’s threats to have LePack arrested and to have letters which could be defamatory sent to the grievance committee, established beyond a reasonable doubt that the defendant intended to threaten or alarm LePack and communicated with him by telephone in a manner likely to cause annoyance or alarm. The trier of fact could reasonably have accepted LePack’s testimony that the telephone calls caused him to be “petrified” and that he felt very threatened by the defendant’s comments with respect to the grievance committee. (Transcript at 61-62.)
The majority states “that the telephone call now complained of was directed not to an unwilling recipient, but to one who seemingly was all too eager to draw out the conversation in what now appears to have been a studied effort to ensnare the defendant into a trap by capturing the call on a tape recorder surreptitiously used.” (Majority op at 66.) This statement by an appellate court, which has not had the benefit of assessing the credibility of the witnesses as did the trier of fact below, bears no support in the record. When Silverberg made the telephone call which was recorded, LePack almost immediately told the defendant “Now, Roy, I am not supposed to talk to you.” It is just as plausible that the defendant may have realized the call was being recorded and inserted the words “courtesy call” and spoke in a “measured tone.” The trial court had sufficient lines of reasoning and permissible inferences to satisfy the proof and burden requirements for the elements of aggravated harassment in the second degree.
I also disagree with the majority’s finding that the verdict was against the weight of the evidence. Judge Bellacosa also wrote in Bleakley (supra),
“Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, ‘weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony’ (People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]; *72 compare, People v Smith, 63 NY2d 41, 52 [1984]; see also, Cohen and Karger, Powers of the New York Court of Appeals § 112, at 484 [rev ed]). If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict (CPL 470.20 [2]).
“Empowered with this unique factual review, intermediate appellate courts have been careful not to substitute themselves for the jury. Great deference is accorded to the fact-finder’s opportunity to view the witnesses, hear the testimony and observe demeanor.” (People v Bleakley, supra, 69 NY2d at 495.)
The majority states that “Defendant’s words, on their face, did no more than haltingly raise the possibility that defendant might pursue available legal channels to address the complainant’s alleged prior misconduct in the event the complainant chose not to ‘drop the charges’ against Polansky.” (Majority op at 65-66.) The factfinder’s conclusion that the defendant’s words constituted a threat to have LePack arrested and/or brought before the grievance committee was not unreasonable given the credible evidence. It is not necessary for the prosecution to establish, by a trial within the trial, whether or not the defendant was threatening to legitimately “pursue available legal channels to address the complainant’s alleged prior misconduct” in order to prove the defendant’s guilt of the offense. I believe that the majority has failed to accord proper deference to the factfinder below, and, despite its assertion that it has faithfully adhered to the review standards governing this appeal, I believe that the majority has not properly applied the relevant standard of review with respect to the legal sufficiency of the evidence and the weight to be given to that evidence. I cannot agree that, in the context of the relationship of the defendant and LePack, an inference other than that the words uttered by the defendant in the recorded telephone call were intended to harass, threaten, annoy or alarm LePack in a manner likely to cause annoyance or alarm is the inference that the trier of fact below should have drawn.
Defendant’s conviction of aggravated harassment in the second degree (Penal Law § 240.30 [1]) should be affirmed.
Davis and Gangel-Jacob, JJ., concur; Suarez, PJ., dissents in part in a separate opinion.

. There was evidence of a second telephone call, unrecorded, approximately five minutes after the recorded one, where defendant is traveling *69 on the highway toward complainant, wherein it appears the conversation is a continuation of the first one. (Transcript at 62-64.)

. Nothing in the statute requires that the prosecution prove beyond a reasonable doubt that a defendant’s threats are “unequivocal” or that a defendant must resort to “invective” before guilt is established.