OPINION OF THE COURT
Walter F. Drag, J.
Defendant, Richard E Conti, charged with a violation of section 64-3 (B) of the Code of the City of Dunkirk, has moved for an order dismissing the information pursuant to CPL 170.35 (1) (a) on the ground that the information is not sufficient on its face; dismissing the information pursuant to CPL 170.35 (1) (c) on the ground that the ordinance is unconstitutionally vague as applied to defendant; and, in the alternative, should the court deny the dismissal applications, suppression of any and all statements attributed to defendant on the ground- that the People failed to timely serve notice upon defendant pursuant to CPL 710.30.
Chapter 64 of the Dunkirk City Code (added June 6, 2006 as Local Law No. 4-2006) is a comprehensive local law aimed at “making] every effort to protect children from sex offenders” by “establishing] residency and proximity restrictions for sex offenders” (Dunkirk City Code § 64-1 [B], [C]), and predicated upon the Council’s finding that “residency in close proximity to areas where minors are required to be present or congregate for recreation purposes pose [sic] an unacceptable level of danger” *455 (Dunkirk City Code § 64-1 [D]).[1] The term “sex offender” is defined by the local law as “a person who has received a Level II or III designation as defined by the Sex Offender Registration Act contained in Article 6-C of the New York State Correction Law” (Dunkirk City Code § 64-2 [A]).
Section 64-3 contains two subdivisions. The first prohibits a sex offender from “residing] within one thousand (1,000) feet of a public or private school, nursery school, pre-school, child care facility, playground, or park” (Dunkirk City Code § 64-3 [A]). The second provides that “[a] sex offender shall not enter into any public or private school, nursery school, pre-school, child care facility, playground, or park” (Dunkirk City Code § 64-3 [B]). At issue in this case, relative to the facial sufficiency and constitutional challenges, is the meaning of the term “school.” Neither chapter 64 nor any other relevant sections of the Dunkirk City Code define such term.
In relevant part, the information alleges that “on the 9th day of September, 2009 on or about 5:30 EM. . . . defendant did enter and remain on the property of Dunkirk Senior High School . . . at a . . . soccer game and outside of the girls bathroom, while being a registered sex offender.” According to the supporting depositions, defendant walked on a paved pathway and/or walkway, from the south end of the high school property near the baseball field north toward the football field, making several stops along the way, including near the girls’ bathroom. There is no allegation that defendant ever stepped outside of the walkway or entered the school building. However, it is alleged that a high school boys’ soccer game was in progress and that he passed along the front of the bleachers, while making his way toward Sixth Street.
*456 Timeliness of Pretrial Motions
Notwithstanding defendant’s failure to make the instant motions “within forty-five days after arraignment” (CPL 255.20 [1]), this court, “in the interest of justice, and for good cause shown” (CPL 255.20 [3]), and as a matter of discretion, shall “entertain and dispose of the motion on the merits” (id.). First and foremost, defendant raises “jurisdictional matters, such as an insufficient accusatory instrument, or rights of a constitutional dimension that ‘go to the very heart of the process’ ” (People v Parilla, 8 NY3d 654, 659 [2007]). Second, inasmuch as the People failed to serve their CPL 710.30 notice upon defendant until October 27, 2009, the forty-third day after defendant’s arraignment, the motion to preclude[2] “could not reasonably have been raised within the [45-day] period” (CPL 255.20 [3]), assuming no tolling. Third, since pretrial motions must be made in the same set of papers unless impracticable or prejudicial to the defense (see CPL 255.20 [2]), it was reasonable for defense counsel to ascertain through the discovery process whether a suppression or preclusion motion was required. Demands were served and filed on October 13, 2009. Defense counsel received the People’s response on October 27, 2009, and at the November 3, 2009 pretrial conference, counsel advised the court that defendant would be making a pretrial motion. The matter was adjourned until December 8, 2009 for defendant to file and serve defendant’s motion papers and for oral argument.
Dismissal of Information — Facial Sufficiency
“Under established principles of judicial restraint,” a nisi prius court should not address constitutional issues when a decision can be reached on nonconstitutional grounds (Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d 531, 535 [1992]). Accordingly, this court will first consider defendant’s challenge to the facial sufficiency of the accusatory instrument.
The facial sufficiency requirements for a local criminal court information come in three parts (see People v Casey, 95 NY2d 354, 360 [2000]). First, the information must allege “facts of an evidentiary character supporting or tending to support the charges” (CPL 100.15 [3]; 100.40 [1] [a]). Second, the “allega *457 tions of the factual part. . . together with those of any supporting depositions . . . [must] provide reasonable cause to believe that the defendant committed the offense charged” (CPL 100.40 [1] [b]). Third, “[n] on-hearsay allegations of the factual part of the information and/or of any supporting depositions [must] establish, if true, every element of the offense charged and the defendant’s commission thereof’ (CPL 100.40 [1] [c]; 100.15 [3]).
“[F]ailure to comply with the ‘prima facie case’ requirement for facial sufficiency ... is a jurisdictional defect” (People v Alejandro, 70 NY2d 133, 139 [1987]) which is “not waived by defendant’s failure to raise the issue until after . . . trial” (id. at 135) or by the entry of a plea of guilty (People v Kalin, 12 NY3d 225 [2009]).
Here, defendant contends that the People “have sought to unlawfully expand the conduct prescribed [sic] by the statute to include entry onto school property, even though the prescribed [sic] conduct is specifically limited, by the very words enacted by the [City Council], to £ent[ry] into’ a school” (defendant’s mem of law at 5). Thus, defendant argues that the allegations of the factual part of the information, together with those of the supporting depositions, fail to comply with the “reasonable cause” and “prima facie case” requirements.
Before analyzing whether the allegations comply with the “reasonable cause” and “prima facie case” requirements insofar as the term “school” is concerned, the court notes that the accusatory part of the information is not limited to the allegation that defendant “enter[ed] into [a] public or private school,” regardless of whether the term “school” means “building” or “grounds” or both. The accusatory part of the information is no more and no less than a verbatim regurgitation of the language of Dunkirk City Code § 64-3 (B) without specifying the exact locus criminis.
Since this court must view the facts and circumstances in the light most favorable to the People (see People v Gonzalez, 184 Misc 2d 262, 264 [App Term, 1st Dept 2000], lv denied 95 NY2d 835 [2000] [inconsistencies in supporting deposition do not affect jurisdictional underpinnings of prosecution]; People v Livio, 187 Misc 2d 302, 311 [Nassau Dist Ct 2000] [facts and circumstances on motion to dismiss information viewed in light most favorable to People]), the locus criminis may be classified by inference, if not by direct allegation, as either a “school,” a “playground” (see Merriam-Webster OnLine Dictionary [2010] [“a piece of land used for and usually equipped with facilities for recreation especially by children”]) or both.
*458 Allegations that defendant walked along the front of the bleachers past the football field, during the middle of a soccer game, are “facts of an evidentiary character supporting or tending to support the charges” (CPL 100.15 [3]) and provide “reasonable cause to believe that the defendant committed the offense charged” (CPL 100.40 [1] [b]), inasmuch as the offense charged includes the term “playground.” Moreover, the “Mon-hearsay allegations . . . establish, if true, every element of the offense charged and the defendant’s commission thereof’ (CPL 100.40 [1] [c]).
“A ‘school’ in its broadest sense may be said to include any institution devoted to instruction of any kind” (Matter of Townsend, 195 NY 214, 221 [1909]). As an adjective, the word may be used in combination with “house” or standing alone before “grounds.”
Based upon the canon of noscitur a sociis, “which counsels that a word is given more precise content by the neighboring words with which it is associated” (United States v Williams, 553 US 285, 294 [2008]), the terms “school” and “into” as used in Dunkirk City Code § 64-3 (B) should be “construed in connection with, and their meaning . . . ascertained by reference to the words . . . with which they are associated” (McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [a]). Given that the term “school” has been associated with the terms “park” and “playground,” this court would be hard pressed not to construe such term in its broadest sense, as including both building and grounds.
Another rule of statutory construction counsels that “[w]hen a word is susceptible of two or more significations, the meaning to be given must be determined from the context of the statute, the purpose and spirit of it, and the intention of the lawmakers” (Statutes § 235). Given the lawmakers’ stated intention of protecting children from sex offenders, particularly in areas “where minors are required to be present or congregate for recreation purposes” (Dunkirk City Code § 64-1 [D]), the court finds that the term “school” should be construed in its broadest sense. To conclude otherwise would be to countenance the absurd position that the intent of the lawmakers was to prohibit a sex offender from entering a school building, but allow such individuals to “enter school grounds and peek in the windows as long as they did not enter the building” (People’s response at 8) or allow sex offenders to sit on bleachers alongside other spectators, including young children, during the *459 middle of a game or practice, or allow sex offenders to stand on walkways leading from a school building to a playground that may be situated on school grounds.
The People’s contention, that the term “school” has been defined in federal and/or state statutes as including grounds as well as building, is without merit. The courts are loath to rely on definitions in one statute to interpret another absent specific legislative authority (see generally People v Hernandez, 98 NY2d 175, 181 [2002]). As well, the court rejects defendant’s argument that the lawmakers’ use of the preposition “into” compels a narrow construction. Legislative usage reveals that the preposition “into” has no particular significance or talismanic quality (compare Penal Law § 140.10 [“enters or remains unlawfully in a building or upon real property” (emphasis added)], with Penal Law § 65.10 [4-a] [a] [“entering into or upon any school grounds” (emphasis added)]).
Based upon the rules of construction, the spirit of the local law and the City Council’s stated intent, this court construes the term “school” as including both building and grounds.
Based upon the foregoing, the allegations of the factual part of the information, together with those of the supporting depositions, provide “reasonable cause to believe” (CPL 100.40 [1] [b]) that defendant “enter[ed] into [a] public or private school” (Dunkirk City Code § 64-3 [B]) when he traversed the school grounds by walking along a paved pathway which took him past the baseball field, football field, girls’ bathroom and the front of the bleachers. Moreover, the “[n]on-hearsay allegations . . . establish, if true, every element of the offense charged and the defendant’s commission thereof’ (CPL 100.40 [1] [c]).
Accordingly, defendant’s motion for an order dismissing the information pursuant to CPL 170.35 (1) (a) is denied.
Constitutional Challenge
State statutes, as well as local laws, “enjoy a strong presumption of constitutionality” (People v Scalza, 76 NY2d 604, 607 [1990]). Defendant bears a heavy “burden of proving unconstitutionality beyond a reasonable doubt” (id.).
The “[v]agueness doctrine is an outgrowth ... of the Due Process Clause of the Fifth Amendment” (United States v Williams, 553 US 285, 304 [2008]). Fundamentally, the doctrine is based on the tenet that “[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair *460 notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement” (Williams, 553 US at 304 [citations omitted]). “Due process requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms” (Foss v City of Rochester, 65 NY2d 247, 253 [1985]).
“A defendant may challenge a statute as being unconstitutionally vague on its face or as applied” (People v Stuart, 100 NY2d 412, 421 [2003]). Here, defendant makes only an as-applied challenge to the legislation. “[A]n as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case” (id.).
A vagueness challenge is analyzed in two parts (see Stuart, 100 NY2d at 420). First, the court must determine whether the statute is “ ‘sufficiently definite “to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute” ’ ” (Stuart, 100 NY2d at 420, quoting People v Nelson, 69 NY2d 302, 307 [1987]). “Second, the court must determine whether the enactment provides officials with clear standards for enforcement” (Stuart, 100 NY2d at 420). When a statute is vague, it “impermissibly delegates basic policy determinations to the police (and eventually to judges and juries) ‘for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application’ ” (Stuart at 421, quoting Grayned v City of Rockford, 408 US 104, 108-109 [1972]). “The absence of objective standards to guide those enforcing the laws permits the police to make arrests based upon their own personal, subjective ideá of right and wrong” (People v Bright, 71 NY2d 376, 383 [1988]).
In analyzing the first part of the two-part vagueness test, a “person of ordinary intelligence” should not have to guess at the meaning of the term “school.” On the other hand, a person of ordinary intelligence should be familiar with matters of common knowledge. Among those commonly known facts are the following: that virtually every public elementary or middle school has a playground located on school grounds and accessible to the building by one or more walkways, that schools use their grounds for soccer games and occasional “open air” classes, that students congregate on school grounds before and after classes, and that virtually every high school has one or more athletic fields, bleachers, and interconnecting walkways.
This court is not required to ignore common sense. To the contrary, the court is required to take common sense into ac *461 count when applying the objective “person of ordinary intelligence” test. Moreover, notwithstanding the reluctance of courts to rely on definitions in one statute to interpret another without specific legislative authority (see e.g. People v Hernandez, 98 NY2d 175 [2002]), such statutes inform the level of understanding of the “person of ordinary intelligence.” Thus, a “person of ordinary intelligence” would be on fair notice that a number of statutes give special protection to school buildings as well as grounds (see e.g. Penal Law § 140.10 [b]-[d]; § 265.01 [3]).
While a “person of ordinary intelligence” unschooled in the law would be oblivious to grandiloquent maxims of statutory construction, such person would have a basic understanding that the meaning of words can be ascertained from their context.
Under all the facts and circumstances, this court finds that the ordinance is sufficiently definite to put a “person of ordinary intelligence” on fair notice that the term “school” means building as well as grounds.
Turning to the second and “perhaps, the more important aspect of the vagueness doctrine” (People v Bright, 71 NY2d at 383) , the ordinance as drafted does not invite arbitrary or discriminatory enforcement. In Bright, the Court of Appeals invalidated a statute which “place[d] complete discretion in the hands of the police to determine whom they will arrest” (id. at 384) . There, the loitering statute required a person to provide a “satisfactory explanation of his presence” or face arrest (id.). The determination as to what constituted a “satisfactory explanation” was left entirely up to the officer on the scene.
Here, the determination as to what constitutes a “school” is not left up the officer on the scene. The words “park” and “playground” send a clear message to police officers that the term “school” is not limited to the building itself, but includes the surrounding grounds and any walkways that may pass through those grounds. When the local law is read as a whole, together with the declaration of legislative purpose, officers enforcing the law are provided with a clear and objective standard. Thus, the “danger[ ] of arbitrary and discriminatory application” is absent (Stuart, 100 NY2d at 421).
Based upon the foregoing, this court finds that the ordinance is not unconstitutionally vague as applied to defend *462 ant.[3] Defendant’s motion to dismiss the information pursuant to CPL 170.35 (1) (c) is therefore denied.
Motion to Preclude Statements
Although it is true that defects in the service or sufficiency of the notice are waived when defendant moves to suppress and the court denies such motion (see CPL 710.30 [3]; People v Lopez, 84 NY2d 425 [1994]; People v Merrill, 87 NY2d 948 [1996] [same result, motion to preclude or in the alternative to suppress]; People v Kirkland, 89 NY2d 903 [1996] [same result, motion to suppress following denial of motion to preclude]; People v Brown, 281 AD2d 700 [3d Dept 2001], lv denied 96 NY2d 826 [2001] [preclusion of unnoticed statement waived by unsuccessful suppression motion]; People v Lazzaro, 62 AD3d 1035 [3d Dept 2009] [despite failure of the notice to specify the sum and substance of the statements, most of the statements were admissible against defendant because he moved to suppress his statements, those statements were identified at the hearing and the court denied the motion after that hearing]; People v Holmes, 170 AD2d 534 [2d Dept 1991] [having moved to suppress, defendant cannot be heard to argue that notice was not sufficiently specific]), defendant’s motion was mislabeled, and is, in fact, a motion to preclude pursuant to CPL 710.30 (3).
“CPL 710.30 is a notice statute intended to facilitate a defendant’s opportunity to challenge before trial the voluntariness of statements made by him” (People v Lopez, 84 NY2d 425, 428 [1994]). CPL 710.30 requires preclusion in the absence of timely notice (see People v Grajales, 8 NY3d 861 [2007]).
Based upon the foregoing, defendant’s motion for an order precluding the People from using at trial all statements attributed to defendant as set forth in the notice of intent dated October 27, 2009 is granted.

. “[I]t is the public policy of this state to protect potential victims of a sex offender ... in limiting where such offender may go or work” (Knudsen v Lax, 17 Misc 3d 350, 351 [2007]). Penal Law § 65.10 (4-a) requires, as a mandatory condition of a sentence of probation or conditional discharge for a level three sex offender, or a person convicted of a specified sex offense whose victim was under the age of 18 at the time of the offense, that such offender “refrain from knowingly entering into or upon any school grounds, as that term is defined in [Penal Law § 220.00 (14)].” Given the limited scope of Penal Law § 65.10 (4-a), both as to the narrowly defined categories of offenders covered and the time limitations imposed on probation or conditional discharge sentences, local laws have emerged in order to “prohibit a sex offender from venturing within a designated distance from areas where children might be found, i.e., playgrounds, pools, schools” (Knudsen, 17 Misc 3d at 352).

. Although labeled as a motion to suppress, it is clear that defendant’s motion is actually a motion to preclude statements attributed to defendant for late service of the notice upon defendant. To deem defendant’s motion as anything other than a motion to preclude is to elevate form over substance.

. Even if the statute was impermissibly vague as applied, the allegation that defendant entered and remained on school property provides an independent basis of finding a violation of the ordinance, which is consistent with the accusatory part of the information as well as the bill of particulars, to the extent that the area through which defendant allegedly walked may also constitute a “playground” (see People v Bowe, 61 AD3d 1185 [3d Dept 2009]).