OPINION
{¶ 1} Defendant-appellant, Buddy Bullock, appeals his conviction in the Clermont County Court of Common Pleas for illegal manufacture of drugs and aggravated possession of drugs. For the reasons stated below, we affirm the decision of the trial court.
 {¶ 2} On the morning of February 22, 2003, Deputy Daniel Cooper of the Clermont County Sheriff's Office and Chief Hesler of the Felicity Police Department visited a residence owned by the grandmother of Billy Sargent. The officers sought to serve arrest warrants on two individuals unrelated to this case thought to be there. Sargent and appellant were the sole occupants of the house at the time and shared the rent expense. After the officers knocked on the front door, Sargent answered and consented to a search of the premises. While searching the exterior, the officers discovered a large burn pile containing the remains of lighter fluid and lantern fuel containers as well as stripped batteries. They also noticed an altered anhydrous tank which smelled strongly of ammonia. In light of these indicators of a clandestine drug laboratory, Deputy Cooper placed a call to his supervisor requesting the assistance of the narcotics task force.
 {¶ 3} The officers also searched a shed located near the house. Their findings included mason jars containing white powdery residue, a hot plate, a respirator, coffee filters, a blender containing white powder, charred tinfoil, and a fire extinguisher. The narcotics agents later re-examined the area and observed that the fuel cans in the burn pile had been punctured and the lithium strips removed from the battery casings in the pile. According to the testimony of Agent Marc Anthony Sorbello, one of the investigating narcotics officers, all of this evidence is consistent with methamphetamine production.
 {¶ 4} The officers next searched the interior of the residence. In the kitchen they encountered appellant. During a brief discussion with the police, appellant voiced his objections to a search of his room. After searching appellant, police allowed him to return to his room to change his shirt and leave the premises along with a female companion who had spent the night with him.
 {¶ 5} A search of the house yielded further evidence of potential drug activity. In appellant's bedroom, officers recovered a broken and burned light bulb, which Agent Sorbello testified is typically used to ingest methamphetamine. A baggie containing methamphetamine was discovered in the front pocket of a shirt resembling the one officers had seen appellant wearing prior to changing clothes. The officers also found appellant's personal effects and mail addressed to him in this room. In an unoccupied bedroom, 60 boxes of pseudoephedrine and 12 lithium batteries, components in methamphetamine production, were discovered in a backpack. Sargent testified that he had seen this backpack in appellant's possession. Pursuant to Agent Sorbello's calculations, this quantity of pseudoephedrine and lithium batteries could yield approximately 48 grams of methamphetamine, a large amount suggesting that the drug was being manufactured for sale.
 {¶ 6} On April 23, 2003 appellant was indicted for illegal manufacture of drugs in violation of R.C. 2925.04(A), a second-degree felony, and aggravated possession of drugs in violation of R.C. 2925.11(A), a third-degree felony. Appellant pled not guilty and waived his right to a jury trial. After a number of continuances, the matter proceeded to a bench trial on May 17, 2004.
 {¶ 7} At trial, Sargent testified that appellant had been living at the residence for about one to two months. Although Sargent rarely entered appellant's bedroom, he acknowledged that appellant kept clothing and other personal items in the room. Sargent explained that he allowed appellant to run the drug lab in exchange for methamphetamine, and admitted to aiding in the production process on a couple of occasions. The state also called Jamison King, who testified that appellant acquired a particular tank fitting from him and an anhydrous tank from a mutual friend.
 {¶ 8} On May 19, 2004, after considering all of the evidence, the court found appellant guilty on both counts. Appellant subsequently filed a motion for new trial, which the court denied after a hearing. On appeal, appellant raises four assignments of error for our review.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT FAILED TO GIVE APPELLANT A CONTINUANCE TO SECURE NEW COUNSEL."
 {¶ 11} Appellant contends that the trial court's denial of his motion for a continuance on the first day of trial was unreasonable. Specifically, appellant faults the court's failure to detail its rationale behind the denial. Appellant insists that he submitted his request for new counsel at the earliest opportunity following his plea hearing,[1] and that his emergent mistrust of appointed counsel following his vacated guilty plea was a valid basis for the request.
 {¶ 12} A trial court has broad discretion in determining whether to grant or deny a continuance. State v. Unger (1981),67 Ohio St.2d 65, 67. When evaluating a motion for a continuance, the court may consider the length of the delay requested, prior continuances, inconvenience, the reason for the delay, whether the defendant contributed to the delay, and any other relevant factors. Id. at 67-68. An appellate court may not reverse the denial of a continuance absent an abuse of discretion. Id. at 67. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. State v. Adkins (2001),144 Ohio App.3d 633, 644.
 {¶ 13} Appellant was found indigent and appointed counsel for this case. "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate `good cause' to warrant substitution of counsel." State v.Cowans, 87 Ohio St.3d 68, 72, 1999-Ohio-250, citing UnitedStates v. Iles (C.A.6, 1990), 906 F.2d 1122, 1130. Examples of "good cause" include a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result. State v. Blankenship (1995),102 Ohio App.3d 534, 558. An appellate court reviews the trial court's denial of a request for substitute counsel for an abuse of discretion. Cowans at 72-73.
 {¶ 14} We find that the trial court did not err when it denied appellant's request for a continuance to obtain new counsel because appellant failed to show "good cause." Appellant neglected to provide a reason for his request other than his desire to obtain a particular attorney, which is not sufficient. Id. at 72. The trial date had been set for seven months prior to appellant's plea hearing, and appellant had ample time in the interim to request new counsel. Regarding appellant's alleged mistrust of his appointed counsel in the face of his aborted guilty plea, appellant neglected to express this distrust at the plea hearing and instead waited until the morning of trial. Further, this case had been previously continued six times. Under these circumstances, the trial court did not abuse its discretion in denying appellant's request for a continuance to obtain new counsel. Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "THE VERDICT SHOULD BE REVERSED BECAUSE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 17} Appellant insists that his counsel's performance was deficient because counsel failed to file a motion to suppress the evidence recovered from appellant's bedroom, which could have removed key evidence from the consideration of the trier of fact. At trial, counsel for appellant objected to the admission of "anything coming in that was found in Mr. Bullock's room." The court found that defense counsel's failure to file a motion to suppress the evidence, the proper avenue for this objection, resulted in a waiver of the issue.
 {¶ 18} To determine that counsel's performance constitutes ineffective assistance, we must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v. Washington (1984),466 U.S. 668, 687-88, 693, 104 S.Ct. 2052. Prejudice exists where appellant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 143-44, citing Strickland at 689.
 {¶ 19} Upon reviewing the record, we find that defense counsel was not ineffective for failing to move to suppress the evidence found in appellant's room. "[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Madrigal, 87 Ohio St.3d 378,389, 2000-Ohio-448, citing Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574. Such an omission signifies ineffective assistance only when the record establishes that the motion would have been successful if made. Cf. State v.Robinson (1996), 108 Ohio App.3d 428, 433. In order to succeed on a motion to suppress evidence, the movant must have had a reasonable expectation of privacy in the area searched. State v.Proctor (May 14, 2001), Warren App. Nos. CA2000-06-059, CA2000-08-068, CA2000-08-078, at 8. Appellant's testimony reveals that he did not have a reasonable expectation of privacy in the bedroom:
 {¶ 20} "Q. You * * * agreed that you'd been living [at Sargent's house] roughly a month; remember to testifying to that?
 {¶ 21} "A. Yes, sir, I do.
 {¶ 22} "Q. And you agreed, I believe, as well that you occupied that middle bedroom —
 {¶ 23} "A. Yes sir.
 {¶ 24} "Q. — at some point. Okay.
 {¶ 25} "A. But I also said I wasn't the only one that occupied that middle bedroom.
 {¶ 26} "Q. Okay. But your testimony is that you did occupy the middle bedroom?
 {¶ 27} "A. I wasn't the only one. I did, but I wasn't the only one, yes." Appellant later reiterated:
 {¶ 28} "Q. So, if I understand your testimony, Mr. Bullock, Jesse Walz, Joey Ott, and Heather Ott, and others were staying inside this middle bedroom; right? You have a flop house if a bunch of them are staying inside that middle bedroom?
 {¶ 29} "A. It's not just the middle bedroom. All the bedrooms, you know, it —
 {¶ 30} "Q. In particular, let's talk about the middle bedroom. Did you not testify that [Jesse Walz], Joey Ott, and Heather Ott and others were staying in there as well as you?
 {¶ 31} "A. Yes."
 {¶ 32} In the absence of a privacy interest, appellant's motion to suppress would not have been properly sustained. Appellant thus failed to demonstrate that he was prejudiced by the claimed deficiency of trial counsel. Appellant's second assignment of error is overruled.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL."
 {¶ 35} Appellant argues that the trial court wrongly denied his motion for new trial. Appellant filed the motion pursuant to Crim.R. 33(A)(2), alleging misconduct on the part of a state witness, Jamison King. To establish misconduct, appellant submitted three affidavits from inmates incarcerated with King stating that King admitted to lying at appellant's trial. The trial court considered appellant's motion under Crim.R. 33(A)(6) rather than Crim.R. 33(A)(2), construing the affidavits as newly discovered evidence. After performing the requisite analysis,[2] the trial court denied the motion.
 {¶ 36} The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. As stated, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable.Adkins, 144 Ohio App.3d at 644.
 {¶ 37} We initially note that appellant's motion for new trial was untimely. Such a motion, when filed under Crim.R. 33(A)(2), must be submitted within 14 days of the court's decision. Crim.R. 33(B). The record indicates that appellant did not file his motion until June 22, 2004, which was 34 days after his conviction. As stated, however, the trial court chose to analyze appellant's motion for new trial on the basis of newly discovered evidence. See Crim.R. 33(A)(6). Because the movant has 120 days to submit a motion for new trial on these grounds, appellant's motion would have been timely if submitted under Crim.R. 33(A)(6). See Crim.R. 33(B).
 {¶ 38} In denying appellant's motion, the trial court reasoned that the affidavits alleging that King admitted to perjuring himself at appellant's trial did not disclose a strong probability that such evidence would change the result if a new trial were granted. King's testimony was not essential to appellant's conviction. The trial court was presented with sufficient evidence to establish appellant's guilt, including Sargent's testimony, circumstantial evidence, and appellant's own implausible testimony. Further, the trial court noted that the affidavits merely attempted to impeach King's testimony, which is not an adequate basis for a new trial. State v. Petro (1947),148 Ohio St. 505, syllabus. We agree with the trial court's sound analysis, and find that its denial of appellant's motion was not so unreasonable, arbitrary, or unconscionable as to constitute an abuse of discretion. Appellant's third assignment of error is overruled.
 {¶ 39} Assignment of Error No. 4:
 {¶ 40} "THE VERDICT SHOULD BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 41} Appellant submits that there is no evidence establishing a connection between him and the methamphetamine lab. Appellant attacks the testimony proffered by King and Sargent, arguing that the court had insufficient evidence to uphold his conviction in view of the dubious credibility of these two witnesses.
 {¶ 42} To determine whether a conviction is against the manifest weight of the evidence, an appellate court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 43} After thoroughly reviewing the record, we conclude that the trier of fact did not lose its way when it found sufficient evidence to convict appellant of illegal manufacture of drugs and aggravated possession of drugs. The trial court, being in the best position to adjudge witness credibility, was free to allocate weight to the testimony that it deemed most trustworthy. See id. Further, the court relied on evidence in addition to witness testimony, including appellant's admission to methamphetamine use in the recent past, the physical evidence in appellant's room, the presence of a methamphetamine lab of which appellant claimed to be ignorant, and other circumstantial evidence. In view of this evidence, we cannot say that appellant's conviction constitutes a manifest miscarriage of justice. Appellant's fourth assignment of error is overruled.
 {¶ 44} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] Appellant's plea hearing took place on Friday, May 14, 2004. Appellant requested a continuance to secure new counsel on the first day of his trial, Monday, May 17, 2004.
[2] In State v. Petro (1947), 148 Ohio St. 505, syllabus, the Ohio Supreme Court ruled that, in order to prevail on a Crim.R. 33(A)(6) motion for new trial on the ground of newly discovered evidence, the movant must establish that the new evidence: (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.