[Cite as *State v. Myers*, 2014-Ohio-3384.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2012-12-027 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 8/4/2014 |
| - vs - | | |
| | : | |
| JOANN E. MYERS, | : | |
| | | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY MUNICIPAL COURT
Case No. CRB1200838

Zahid Siddiqi, London City Law Director, 102 S. Main Street, P.O. Box 724, London, Ohio 43140, for plaintiff-appellee

Joann E. Myers, 12488 Leeper Perkins Road, Marysville, Ohio 43040, defendant-appellant, pro se

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Joann E. Myers, appeals pro se from her conviction in the Madison County Municipal Court for one count of disorderly conduct. For the reasons outlined below, we affirm.

{¶ 2} On October 16, 2012, a complaint was filed in the Madison County Municipal Court charging Myers with one count of disorderly conduct in violation of R.C. 2917.11(A)(2),

a minor misdemeanor. The charge stemmed from allegations that while outside a gas station located in the city of London, Madison County, Ohio, on the morning of September 20, 2012, Myers "cursed, threatened bodily harm and continued to do so, until the victim," in this case Bill Cain, "walked away."

{¶ 3} On October 24, 2012, Myers appeared in court for her arraignment and entered a plea of not guilty. The trial court then scheduled the matter for a bench trial on November 13, 2012. Following the bench trial, Myers was found guilty and ordered to pay a $100 fine. Myers now appeals from her disorderly conduct conviction, raising three assignments of error for review.

{¶ 4} Before addressing Myers' three assignments of error, however, we find it necessary to inform Myers that "the right of self-representation is not a license for failure to comply with the relevant rules of procedure and substantive law." *State v. Palmer*, 12th Dist. Warren No. CA2005-08-097, 2006-Ohio-2712, ¶ 9. In other words, a criminal defendant appearing pro se is expected, as attorneys are, to abide by the rules of evidence and procedure, regardless of his or her familiarity with them. *State v. Gellenbeck*, 12th Dist. Fayette No. CA2008-08-030, 2009-Ohio-1731, ¶ 29. Moreover, pro se litigants are "not to be accorded greater rights and are bound to accept the results of their own mistakes and errors, including those related to correct legal procedures." *State v. Kline*, 12th Dist. Warren No. CA2004-10-125, 2005-Ohio-4336, ¶ 9. It is also not this court's duty to "root out" arguments that can support an assignment of error, nor will this court "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning." *State v. Fields*, 12th Dist. Brown No. CA2009-05-018, 2009-Ohio-6921, ¶ 7.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL ERRED BY BASEING [sic] CONVICTION ON THE CONTENT OF SPEECH.

{¶ 7} In her first assignment of error, Myers initially argues her disorderly conduct conviction must be reversed because it was based on the content of her speech in violation of her First Amendment rights. In support of this claim, Myers alleges her conviction was improper as it was based solely upon her calling Cain a "stupid n****r."[1] We disagree.

{¶ 8} Pursuant to R.C. 2917.11(A)(2), no person shall "recklessly cause inconvenience, annoyance, or alarm to another by * * * [m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person." The Ohio Supreme Court has held that "a person may not be found guilty of disorderly conduct under subsection (A)(2), which proscribes offensively coarse utterances and grossly abusive language, unless the words spoken are fighting words."[2] *State v. Bailey*, 1st Dist. Hamilton No. C-010641, 2002-Ohio-3133, ¶ 16, citing *State v. Hoffman*, 57 Ohio St.2d 129 (1979), paragraph one of the syllabus. However, "[w]here a charge of disorderly conduct is not based on the content of the speech involved but only the manner of how the words are spoken, the fighting words requirement does not apply." *Warrensville Heights v. Brown*, 8th Dist. Cuyahoga No. 89346, 2008-Ohio-126, ¶ 12, quoting *State v. Cunningham*, 10th Dist. Franklin No. 06AP-145, 2006-Ohio-6373, ¶ 22.

---

1. In her brief, Myers claims to have called Cain a "stupid n***a," as opposed to a "stupid n****r." Myers has also provided this court with her understanding of the perceived differences between the words "n***a" and "n****r." However, without providing any opinion as to the alleged differences between these two words, the record reveals that Myers actually admitted to calling Cain a "n****r" at trial. As Myers testified, "No one can really say what I said. All they can say is that I called Bill [Cain] a n****r."

2. Our research has revealed that under the law of this state, the mere use of the word "n****r" has not been found to constitute a "fighting word." *See State v. Dotson*, 7th Dist. Mahoning No. 93 CA 250, 1995 WL 750147, *2 (Dec. 13, 1995) (holding "[w]ords such as 'Uncle Tom' and 'N****r' are not fighting words"); *see also People v. Livio*, 187 Misc.2d 302, 308 (N.Y.2000) (finding that "[t]aken in context, 'n****r' is not equivalent to 'fighting words'"); *but see In re Spivey*, 345 N.C. 404, 414, 480 S.E.2d 693 (1997) ("No fact is more generally known than that a white man who calls a black man a '[n****r]' within his hearing will hurt and anger the black man and often provoke him to confront the white man and retaliate"). *In re John M.*, 201 Ariz. 424, 36 P.3d 772, 776-77 (Ariz.Ct.App.2001) (holding "f**k you, you god damn n****r" were "fighting words" because the statement "was likely to provoke a violent reaction when addressed to an ordinary citizen of African-American descent"); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239, 245 (1998) (recognizing defendant uttered "fighting words" by telling an African-American police officer, "f**k you, n****r"); *Sims v. Montgomery County Com'n.*, 766 F.Supp. 1052, 1097, fn. 128 (M.D.Ala.1990) (stating "because African-Americans are no longer taught that they are second-class citizens but rather that they stand equal with people of all races, the term '[n****r]' is often a 'fighting word'").

{¶ 9}  As noted above, the complaint charging Myers with disorderly conduct was based on allegations she "cursed" and "threatened bodily harm" until Cain walked away. These allegations were confirmed through the testimony from several witnesses elicited at trial, which firmly established Myers screamed and verbally threatened Cain outside a local gas station for a period of approximately 10 to 15 minutes.  During this time, Cain testified Myers confronted him in a physically threatening manner and called him a "f***ing n****r," a "mother f***er," a "lowlife son of a bitch," and a "mother f***ing lowlife n****r."  Cain also testified Myers jumped at him, told him to "come on hit me," and loudly proclaimed "n****r, I ain't scared of you."

{¶ 10} In addition, an eyewitness to the incident testified Myers called Cain "a bad bastard" and "a worthless mother f****r."  Continuing, this eyewitness testified as follows:

> She called him a n****r.  She stood in the middle of the parking lot with her arms out like this screaming, hit me mother f****r, hit me mother f****r.  I'll get you for assault.  [Cain] said, woman, I don't even know you.  What are you talking about.  She – on and on and on and on.

There was also testimony Myers told Cain, "hit me in front of all these people and I'll have you thrown in jail," and that Myers later told a friend she "ran into [Cain] and I called him a f***ing n****r and we was in each other's face telling each other to hit each other[.]" According to Cain's testimony, Myers' disruptive and abusive behavior was upsetting to him.

{¶ 11} As can be seen, Myers' disorderly conduct conviction was based on much more than her merely uttering an offensive racial epithet at Cain.  Rather, as a simple review of the record reveals, Myers' conviction was based on her overtly disruptive, threatening and abusive behavior towards Cain as he was standing outside a local gas station. *See, e.g., In re A.R.*, 2010 ND 84, 781 N.W.2d 644 (finding juvenile's use of term "stupid n****r" combined with his threatening actions supported disorderly conduct conviction that was not a violation of First Amendment freedom of speech).  As the trial court explicitly found in reaching its

guilty verdict, Myers "did engage in making unreasonable noise and offensively course utterances and gestures, communicate * * * abusive language no doubt." We find no error in the trial court's findings. Therefore, as Myers' disorderly conduct conviction was not based solely on the content of her speech, but rather, on her overtly disruptive, threatening and abusive behavior, Myers' first argument is without merit and overruled.

{¶ 12} Myers also argues under her first assignment of error that her conviction must be reversed because disorderly conduct under R.C. 2917.11(A)(2) is unconstitutionally void for vagueness. Myers, however, did not raise this issue to the trial court. "Failure to raise the issue of the constitutionality of a statute or its application at the trial court level generally constitutes waiver of that issue and need not be heard for the first time on appeal." *State v. Golden*, 10th Dist. Franklin No. 13AP-927, 2014-Ohio-2148, ¶ 11.

{¶ 13} Regardless, even if Myers had not waived this issue, the Ohio Supreme Court has already determined that the statute "does provide adequate qualifying language to prevent the statute from being unconstitutionally vague." *State v. Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 20. Therefore, because R.C. 2917.11(A)(2) is not unconstitutionally vague, Myers second argument is likewise without merit and overruled.

{¶ 14} Accordingly, having found no merit to either of the two arguments advanced by Myers herein, Myers first assignment of error is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED BY DENYING APPELLANT PRE-TRIAL.

{¶ 17} In her second assignment of error, Myers argues her disorderly conduct conviction must be reversed because the trial court did not hold a pretrial hearing contrary to its own local rules. However, a review of the trial court's local rules clearly establishes that a pretrial hearing is not mandatory and is within the trial court's sole discretion. The trial court's decision not to hold a pretrial hearing in this matter – a minor misdemeanor disorderly

conduct charge – does not constitute an abuse of discretion. Myers' first argument is therefore overruled.

{¶ 18} We also find no merit to Myers' claim she arrived at court on the day of trial, November 13, 2012, believing the court was merely planning on holding a pre-trial hearing. As a simple review of the record reveals, the trial court's journal entry submitted after Myers' arraignment clearly states the matter had been set for trial on that date. The record also contains a notice signed by Myers that explicitly states a trial had been scheduled for that day. In fact, Myers' own recognizance papers contain language specifically noting she was to appear at court that day to "answer to the charge[.]" Nothing about these filings indicates there would be "more than one hearing on this matter and that [November 13, 2012] would not be the actual trial hearing," as Myers now suggests. This is particularly true given the fact Myers herself subpoenaed a witness to appear at court that day to testify on her behalf. Therefore, Myers' second argument is also overruled.

{¶ 19} Accordingly, having found no merit to either of the two arguments advance by Myers herein, Myers' second assignment of error is overruled.

{¶ 20} Assignment of Error No. 3:

{¶ 21} THE TRIAL COURT ERRED BY DENYING APPELLANT'S RIGHT TO A FAIR TRIAL AND DENYING MOTION FOR CONTINUANCE.

{¶ 22} In her third assignment of error, Myers raises a variety of claims as to why her disorderly conduct conviction must be reversed. For instance, Myers first argues her conviction must be reversed because the trial court erred by denying her request for a continuance on the morning of trial. However, besides the allegations contained in her appellate brief, the record before this court does not contain any indication Myers ever actually made such a request.

{¶ 23} Yet, even assuming Myers did request a continuance, it is well-established that

"[a] trial court has broad discretion in determining whether to grant or deny a continuance." *State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 12, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Given that Myers' request occurred on the morning of trial, we find no abuse of discretion here. Simply stated, "[t]he trial court had an interest in controlling its own docket and ensuring the prompt and efficient administration of justice." *State v. Haynes*, 12th Dist. Brown No. CA2009-07-025, 2010-Ohio-2960, ¶ 9 (finding no abuse of discretion in denying appellant's request for a continuance on the day of trial). Therefore, Myers' first argument is overruled.

{¶ 24} Next, Myers argues her conviction must be reversed because the state failed to comply with Crim.R. 16 by not providing her with the phone records and notes from Officer Joe Cox, the investigating officer in this matter, as well as the gas station video surveillance footage. Again, besides her bare assertions to the contrary, there is nothing in the record that would support these allegations.

{¶ 25} However, even if we were to find merit to Myers' claims, we fail to see how the phone records from Officer Cox would have had any impact on the outcome of this case.[3] As the record reveals, Myers had the police report and all witnesses' statements relevant to this matter. Furthermore, as it relates to the gas station video surveillance footage, the owner of the gas station, Kamaljit Sigh, specifically testified the requested footage simply does not exist. Myers' second argument is therefore overruled.

{¶ 26} Myers also argues her conviction must be reversed because the trial court judge failed to recuse himself due to his alleged bias. However, even if a recusal would have been proper in this case, it is well-established that "a court of appeals is without authority to

---

3. Although not particularly clear, based on the trial transcript, it appears Myers was attempting to use the phone records to prove Officer Cox never called her during his investigation. We fail to see the relevancy in this line of questioning. Nevertheless, when questioned about this on cross-examination, Officer Cox readily admitted that he never attempted to call Myers. Rather, Officer Cox testified he "knocked on [Myers'] door and got no response." We will not question Officer Cox's tactics in investigating this matter.

pass upon disqualification or to void the judgment of the trial court upon that basis." *State v. Wesley*, 12th Dist. Warren No. CA2008-06-086, 2008-Ohio-6755, ¶ 18, quoting *State v. Ramos*, 88 Ohio App.3d 394, 398 (9th Dist.1993).

{¶ 27} Rather, in order to disqualify a municipal court judge, a party must comply with procedures set forth in R.C. 2701.031. This statute "provides the exclusive means by which a litigant may claim that a municipal court judge is biased and prejudiced." *State v. Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, ¶ 17 (9th Dist.). In turn, "[d]isqualification proceedings are not initiated in the court of appeals and cannot be reviewed by a court of appeals." *State v. Ludt*, 180 App.3d 672, 2009-Ohio-416, ¶ 17 (7th Dist.), citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441 (1978). Myers' third argument is therefore overruled.

{¶ 28} Myers next argues her conviction must be reversed because the trial court erred by not providing an interpreter for Sigh, the owner of the gas station, for purposes of trial. Once again, Myers never raised this issue with the trial court. Nevertheless, a review of the trial transcript does not support Myers' claim that Sigh could not answer her questions on cross-examination due to any alleged language barrier. The following is Myers' entire questioning of Sigh on cross-examination:

> Q: Do you know approximately what time this happened, what time of day?
>
> A: I think it's noon. I haven't – I do not remember the times.
>
> MS. MYERS: Okay. Thank you. I have nothing further.
>
> THE COURT: You're free to go. You don't have to (INAUDIBLE)
>
> MS. MYERS: Oh, I'm sorry. One more.
>
> THE COURT: Have a seat. What's the question?
>
> Q: You're the manager?
>
> A: I own.

THE COURT: He's the owner.

Q: You're the owner? How far back do your videos go?

A: Probably seven week maybe. I don't remember. My cousin handle that. I don't know.

Q: Is there a reason why on the day of question for your file, I spoke with Darla, your manager at Sunoco One Stop, and she said that your film starts on September 20th at 10:48. And that just seems an odd time for everything before that date and time to be erased.

A: Ma'am, I don't pay attention. I don't ask, you know, what time ago, (INAUDIBLE) go back there. I have no idea.

Q: Okay. Thank you.

A: Yeah.

THE COURT: You're free to go.

A: Thank you, sir. I appreciate that.

As can be seen, Myers' claims that the trial court "proceeded to answer [her] questions for the witness and then barred [her] from further questioning the witness, who [the trial court] excused prior to [her] completing her questioning," are simply false. Myers' fourth argument is therefore overruled.

{¶ 29} Although not explicit, Myers also argues her disorderly conduct conviction must be reversed as it was against the manifest weight of the evidence resulting from a number of so-called evidentiary "irregularities." However, as discussed more fully above, the record firmly establishes that Myers screamed and verbally threatened Cain outside a local gas station for a period of approximately 10 to 15 minutes. During this time, the record indicates Myers called Cain a "f***ing n****r," a "mother f***er," a "lowlife son of a bitch," and a "mother f***ing lowlife n****r." This court will overturn a conviction due to the manifest weight of the evidence only in "extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and

CA2013-08-147, 2014-Ohio-2472, ¶ 34. This is not one of those times. Myers' fifth argument is therefore overruled.

{¶ 30} Myers makes a variety of additional arguments she believes requires a reversal of her disorderly conduct conviction. For example, Myers claims her conviction was improper because the case was not tried by a prosecutor from the city of London, where the incident took place, but "by the Prosecutor for the County of Madison." Myers also claims she was subject to "public hostility," and that the state's witnesses were nothing more than "paid day workers of Mr. Cain." After a thorough review of the record, we find no merit to any of Myers' additional arguments. Myers' remaining arguments are therefore overruled.

{¶ 31} Accordingly, having found no merit to any of the various arguments advance by Myers herein, Myers' third assignment of error is overruled.

{¶ 32} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.