[Cite as *State v. Riley*, 2020-Ohio-4878.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-11-029 |
| | : | O P I N I O N |
| - vs - | | 10/13/2020 |
| | : | |
| MATTHEW S. RILEY, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20190094


Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for appellee

Treynor Law, Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for appellant


**RINGLAND, J.**

{¶1}   Appellant, Matthew Riley, appeals his convictions in the Madison County Court of Common Pleas.  For the reasons detailed below, we affirm.

{¶2}   On July 23, 2019, Dawn and Danny Lemaster went to the city of London to help their niece move new appliances into her residence on Liberty Street.  Both Dawn and Danny had known Riley for about five years, though they were not well acquainted.  On that

day, Riley stopped to talk with Dawn and Danny about the old stove that they had just moved out of the residence. Following a brief conversation, Riley left.

{¶3} After Riley left, Dawn heard a loud noise that sounded like someone breaking down a door. Upon inspection, Dawn and Danny observed Riley enter and remove items from a neighboring property. Danny personally observed Riley put a television and telescope into a white van. As a result, Dawn directed her niece to call the police. As she did, the niece also personally observed Riley taking items from her neighbor's residence.

{¶4} Riley then got into the passenger side of the white van and the driver put the van in reverse. As he did, the van hit a house, rendering the vehicle temporarily inoperable. The driver fled on foot. Riley, however, moved over to the driver's seat to extricate the vehicle from the house. Following some difficulty, Riley was able to dislodge the vehicle and sped away, hitting another car in the process. As Riley attempted to speed away, another bystander entered his vehicle to follow him. The van eventually broke down again a short distance away.

{¶5} Officer Frank White responded to the scene. Dawn and Danny spoke with Officer White and informed him of what had transpired and that they knew the suspect's name. Police later found the abandoned white van that had since been reported stolen by Riley's brother. Finally, Officer White interviewed the property owner who did not know Riley or give him permission to remove items from her home.

{¶6} Riley was arrested and charged with burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, and theft in violation of R.C. 2913.02(A)(1), a fifth-degree felony. The trial court set a bond in the amount of $15,000 and appointed Riley counsel due to his indigency. Riley did not make bond and remained in the Madison County Jail awaiting trial.

{¶7} At a pretrial hearing on September 10, 2019, Riley voiced his displeasure with

his trial counsel because counsel did not visit him in the jail prior to the pretrial hearing. Riley was also upset that his counsel had not filed a motion for a reduction of charges. During the hearing, Riley continued to speak over the trial court even after his counsel warned him not to, as he had made several potentially incriminating statements. Despite Riley's protests, the trial court did not appoint him new counsel but instead allowed him to remain at the facility so that he and his counsel could have time to meet and address his concerns.

{¶8} On October 1, 2019, the trial court held another pretrial hearing. Riley again requested new counsel. This time, Riley complained that he was dissatisfied because his counsel wanted him to plead to "something I didn't do." Riley expressed that he wanted to fire his counsel and either have new counsel appointed or to represent himself. The trial court found that Riley failed to establish a right to new counsel.

{¶9} The trial court held a final pretrial hearing on October 4, 2019 to inquire whether Riley wished to represent himself. Riley spoke argumentatively with the trial court and maintained that he was asking for "effective non-biased counsel." Following several interjections by Riley, the trial court asked a "yes-or-no question" whether he wished to represent himself during trial. Riley responded by stating "I choose not to answer." After further inquiry, Riley stated that "[a]t this time I choose not to talk," which the trial court understood as a "no," that Riley did not wish to defend himself. Riley then refused to speak anymore.

{¶10} After concluding that Riley would not be representing himself, the state moved to amend the charge of burglary from a second-degree felony to a third-degree felony. The trial court allowed the modification.

{¶11} The matter proceeded to a jury trial. The state presented the testimony of the victims, the eyewitnesses, and Officer White. Following the conclusion of trial, the jury

found Riley guilty of both burglary and theft. The trial court sentenced Riley to prison for 12 months for theft and 30 months for burglary and ordered those be served concurrently, but consecutive to an additional 12-month prison term for violating the terms of his postrelease control for a total aggregate prison term of three-and-one-half years. Riley now appeals, raising a single assignment of error for review:

{¶12} THE COURT ABUSED ITS DISCRETION BY DENYING THE APPELLANT'S REQUEST FOR NEW APPOINTMENT OF COUNSEL.

{¶13} In his sole assignment of error, Riley argues the trial court erred by denying his request for new counsel. Riley's argument is without merit.

{¶14} The Sixth Amendment to the U.S. Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his [defense]." This fundamental right is preserved in state actions by the Fourteenth Amendment to the U.S. Constitution. *Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792 (1963). For defendants who cannot afford to hire a lawyer, appointment of counsel at the public's expense is required. *Id.* at 344. However, unlike the right to counsel, the right to counsel of choice is not absolute. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

{¶15} An "indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 13, quoting *State v. Cowans*, 87 Ohio St.3d 68, 72, (1999). Examples of "good cause" include a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result. *Id.*, citing *State v. Blankenship*, 102 Ohio App.3d 534, 558 (12th Dist. 1995). An appellate court reviews the trial court's denial of a request for substitute counsel for an abuse of discretion. *Cowans* at 72-73; *State v. Ingram*, 6th Dist.

- 4 -

Sandusky No. S-16-046, 2017-Ohio-5685, ¶ 8.

{¶16} Riley contends the trial court erred by not appointing him new counsel because there was a "complete breakdown" in communication. In support, Riley alleges that his counsel called him a "dumbass" for not accepting the plea offer and suggested that he would receive a five-year prison sentence. Riley also claims that his counsel laughed at him when he asked him to "get witnesses." Riley argues that he wanted to hire counsel of his choosing so that he could subpoena potential witnesses for trial. Riley further suggests the trial court was condescending during the pretrial hearings and applied the wrong standard of review in considering his request for new counsel.

{¶17} The transcript of the relevant pretrial hearings is fragmented due to Riley's argumentative posture with the trial court. However, Riley's concerns were addressed by the trial court. As to Riley's claim that his counsel called him a "dumbass" for advising him to take a plea deal, the trial court stated:

> THE COURT: Mr. Riley, you just heard the representation of [trial counsel] and when I asked him are we going to trial or not and his answer was yes, we're going to trial noticeably absent from that was him saying you're a dumbass and five years is the offer.
>
> [Trial counsel] are you prepared to go to trial?
>
> [Trial counsel]: I am.

In addressing Riley's argument that his counsel was not adequately representing him, the following dialogue occurred:

> THE COURT: You just heard him say that he's - -
>
> [RILEY]: He said for me to plead - -
>
> THE COURT: - - ready to go.
>
> [RILEY]: - - and I won't go for that. I asked him about the bond and asked him not to represent me.

He's done nothing I asked. I've asked him to get witnesses. I've asked for a lot of things and he keeps telling me no. He walked in and laughed at me. My life and freedom is [sic] not a joke, Your Honor.

He's insufficient counsel. I keep saying this. You say that he's not.

THE COURT: I don't know what insufficient counsel is. What does that mean?

[RILEY]: It means he's not doing - - he's not trying to work for me. It means he's telling me to plead guilty and if I don't then - -

THE COURT: Mr. Riley, we went down this road the last time and I explained to you in no uncertain * * * terms that telling you what you want to hear is not the job - -

[RILEY]: I don't want - -

THE COURT: - - of your attorney.

You're talking when you should be listening.

Telling you what you want to hear is not his job. His job is to look at this evidence presented by the State to make an assessment of that evidence to determine whether or not you have viable defenses and then advise you of what he thinks you ought to do, and what you're telling me is you don't like what he's telling you and you seem to think that that is insufficient counsel, whatever that is.

[RILEY]: Telling me to plead to something I didn't do is not right no matter what the reason.

THE COURT: You do not have the right, Mr. Riley, to whatever attorney you want. You have had the right from the beginning to * * * go out and hire your own attorney.

The trial court ultimately found that Riley failed to establish a valid basis for appointing new counsel.

{¶18} Following review, we find the trial court did not err by denying his request for new counsel. Despite Riley's arguments to the contrary, he has not demonstrated "good cause" to warrant substitution of counsel. In this case, the record demonstrates that both

Riley and his counsel communicated about the case and counsel acted faithfully in his defense. As correctly noted by the trial court, Riley's trial counsel was to perform his job as an attorney, which includes, among many things, the obligation to assess the state's evidence and appropriately advise the client. This may well involve candid advice between attorney and client to enter into a plea deal. *Cowans*, 87 Ohio St.3d at 73 (even if counsel "had explored plea options based on a belief that [their client] might be guilty, counsel's belief in their client's guilt is not good cause for substitution"). It was not Riley's counsel's obligation to merely tell him what he wanted to hear. Furthermore, Riley's argument that his counsel was attempting to get him to plead "to something I didn't do," is particularly suspicious. As the jury later found credible, the state presented evidence that Riley had been "caught red handed" by several eyewitnesses *who knew him.* Review of the trial transcript reveals that the state presented overwhelming evidence of guilt. While there is some evidence that Riley had a strained relationship with his counsel, it did not amount to a "complete breakdown" in communication that would warrant removal from the case. The trial court did not abuse its discretion in denying Riley's request for new counsel. As a result, Riley's sole assignment of error is overruled.

{¶19} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.