[Cite as *State v. Reeder*, 2023-Ohio-4587.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-05-062 |
| | : | O P I N I O N |
| - vs - | | 12/18/2023 |
| | : | |
| DANIEL REEDER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 22CRB02308 B

Laura R. Gibson, Assistant Prosecuting Attorney, for appellee.

Engel and Martin, LLC, and Jim L. Hardin, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Daniel Reeder, appeals his conviction in the Hamilton Municipal Court after a jury found him guilty of one count of fourth-degree misdemeanor disorderly conduct. For the reasons outlined below, we affirm Reeder's disorderly conduct conviction.

{¶ 2} On the morning of October 6, 2022, Reeder was arrested and thereafter

charged via a complaint with two counts of disorderly conduct in violation of R.C. 2917.11(A)(2) and (A)(3).[1]  Disorderly conduct is usually charged as a minor misdemeanor pursuant to R.C. 2917.11(E)(2).  However, in this case, each of the two counts against Reeder were charged as fourth-degree misdemeanors.  This was done in accordance with R.C. 2917.11(E)(3)(a), which provides that disorderly conduct should be charged as a fourth-degree misdemeanor if "[t]he offender persists in disorderly conduct after reasonable warning or request to desist."

{¶ 3}  The charges arose after Reeder, a stay-at-home father to seven children, got upset, stormed out of his house, and began screaming and cursing as he watched his vehicle being loaded up and towed away off the street in front of his home located on Van Buren Drive in Hamilton, Butler County, Ohio.[2]  Reeder continued on with his disruptive, profanity-laced tirade even after he was told multiple times by a Hamilton police officer on the scene, Officer Carla Browning, that he would be placed under arrest if he did not stop with his unruly, and upsetting behavior.  There is no dispute that Reeder's continued screaming and cursing occurred in the presence of several of his neighbors who had come outside in response to Reeder's yelling to see what all the commotion was about.

{¶ 4}  On April 10, 2023, the matter proceeded to a one-day jury trial.  During trial, the jury heard testimony from a total of five witnesses.  This included testimony from the Hamilton police officer referenced above, Officer Browning, the tow truck driver who towed Reeder's vehicle, Stanley Bishop, and from Reeder himself.  Upon the conclusion of this testimony, as well as the testimony from one of Reeder's neighbors who testified that she could hear Reeder cussing and carrying on from inside her home situated catty-cornered

---

1.  Reeder was also charged in a separate complaint with one count resisting arrest in violation of R.C. 2921.33, a first-degree misdemeanor.  A jury found Reeder not guilty of this charge.

2.  The vehicle in question was a Hyundai Santa Fe that was displaying plates that had been expired for over a year.

across the street, the jury returned a verdict finding Reeder guilty of one count of fourth-degree misdemeanor disorderly conduct.

{¶ 5} On April 12, 2023, the trial court held a sentencing hearing where it sentenced Reeder to 30 days in jail, with 15 of those days suspended, and two years of community control.[3] The trial court also ordered Reeder to pay a $100 fine plus court costs. The trial court imposed this sentence after noting it was Reeder's "attitude about what was going on that day" that was "totally," and "completely inappropriate" when considering he was directing his vitriol "towards an officer," Officer Browning. Reeder now appeals his disorderly conduct conviction, raising the following single assignment of error for review.

{¶ 6} AS A MATTER OF LAW, APPELLANT'S CONDUCT DID NOT CONSTITUTE DISORDERLY CONDUCT IN VIOLATION OF R.C. 2917.11.

{¶ 7} In his single assignment of error, Reeder argues the trial court erred by denying his Crim.R. 29(A) motion to acquit him of disorderly conduct. Reeder also argues the jury's verdict finding him guilty of disorderly conduct was against the manifest weight of the evidence. We disagree with both of Reeder's claims.

{¶ 8} Pursuant to Crim.R. 29(A), the trial court must "order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Given this language, it is now well-established that "[t]he standard of review for a denial of a Crim.R. 29(A) motion for acquittal is the same as the standard of review for a sufficiency of the evidence claim." *State v. Wilson*, 12th Dist. Fayette No. CA2021-10-023, 2022-Ohio-1146, ¶ 27. "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of

---

3. The trial court stayed Reeder's sentence pending this appeal.

law."  *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Such a challenge "requires a determination as to whether the state has met its burden of production at trial."  *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34.  "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *State v. Roper,* 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs."  R.C. 2901.05(E).

{¶ 9}    Unlike the sufficiency-of-the-evidence standard of review, which applies only to the state's burden of production, "a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion."  *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26.  "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 18, citing *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.  But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide.  *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs

heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10. When reviewing a jury verdict, this occurs "only when there is unanimous disagreement with the verdict." *State v. Marcum*, 12th Dist. Preble No. CA2015-04-011, 2016-Ohio-263, ¶ 10, citing *State v. Gibbs*, 134 Ohio App.3d 247, 255 (12th Dist.1999).

{¶ 10} As noted above, Reeder was convicted of one count of fourth-degree misdemeanor disorderly conduct in violation of either R.C. 2917.11(A)(2) or (A)(3).[4] Pursuant to R.C. 2917.11(A)(2), no person shall recklessly cause inconvenience, annoyance, or alarm to another by "[m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person[.]" Similarly, under R.C. 2917.11(A)(3), no person shall recklessly cause inconvenience, annoyance, or alarm to another by "[i]nsulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response[.]" "The Ohio Supreme Court has held that 'a person may not be found guilty of disorderly conduct under subsection (A)(2), which proscribes offensively coarse utterances and grossly abusive language, unless the words spoken are fighting words.'" *State v. Myers*, 12th Dist. Madison No. CA2012-12-027, 2014-Ohio-3384, ¶ 8, quoting *State v. Bailey*, 1st Dist. Hamilton No. C-010641, 2002-Ohio-3133, ¶ 16, citing *State v. Hoffman*, 57 Ohio St.2d 129 (1979), paragraph one of the syllabus. However, "[a] conviction for disorderly conduct under R.C. 2917.11(A)(3) need not be based solely on an individual using 'fighting words.'" *State v. Winters*, 2d Dist. Montgomery No. 29157, 2022-Ohio-2061, ¶ 26. Ohio courts, including this court, have instead "interpreted R.C. 2917.11(A)(3) as prohibiting both the offender's use of 'fighting words' and/or conduct likely to 'provoke a

_____

4. The jury's verdict form setting forth its verdict finding Reeder guilty of disorderly conduct does not specify which subsection it found Reeder guilty: R.C. 2917.11(A)(2), (A)(3), or both. The record is nevertheless clear that Reeder was sentenced on just one of the two counts of disorderly conduct for which he was charged.

violent response.'" *State v. Schils*, 12th Dist. Clermont No. CA2019-08-67, 2020-Ohio-2883, ¶ 19, citing *State v. Miller*, 6th Dist. Lucas No. L-86-281, 1987 Ohio App. LEXIS 5942, *4 (Feb. 27, 1987).

{¶ 11} Reeder argues his disorderly conduct conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because, "while certainly containing curse words," anything that he may have yelled at Officer Browning "did not rise to the level of fighting words."  Reeder instead claims that any "swear words [being] uttered" to Officer Browning was merely him "commenting upon the situation."  Reeder also argues that his disorderly conduct conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because he did not threaten, lunge, or attack Officer Browning, nor did he threaten or interfere with the tow truck driver, Stanley Bishop, while he was loading up and towing away his vehicle.  To support these arguments, Reeder notes that there were no children present who witnessed his tirade, and that his outburst "was not in a public parking lot or business lot," but in a residential area just outside of his own home.  This is in addition to Reeder claiming that he only "interacted with" Officer Browning for "about five minutes, mostly on his own property."

{¶ 12} However, even when taking all of Reeder's claims as true, the record plainly establishes that Reeder's disorderly conduct conviction was not based on the content of his speech, but on his actions and the manner in which his words were spoken.  "Where a charge of disorderly conduct is not based on the content of the speech involved but only the manner of how the words are spoken, the fighting words requirement does not apply." *State v. Cunningham*, 10th Dist. Franklin No. 06AP-145, 2006-Ohio-6373, ¶ 22.  Such is certainly the case here.  This is because, as the record indicates, upon Reeder seeing Bishop getting ready to tow his vehicle, Reeder stormed out of his house "irate," "cussing and swearing."  The record indicates that Reeder's "cussing and swearing," and overall

"confrontational" tone, continued as he hastily made his way down to the end of his driveway to where Officer Browning was standing nearby. The "very upset" Reeder then began loudly shouting and cursing at Officer Browning directly. This included, as one witness testified, Reeder yelling "[a] lot of the fuck word," multiple instances of "bullshit," maybe a "[t]his is fucking bullshit," and a few utterances of "get off of my lawn."

{¶ 13} This is in addition to the testimony offered by Stanley Bishop, the tow truck driver who towed Reeder's vehicle, who testified that after Officer Browning tried to hand Reeder a parking citation that Reeder began "yelling at her, get the fuck off his property, fucking bitch," and "kept telling her to get the fuck off his property." Bishop testified that during this time Reeder "screamed" at Officer Browning to "get off [his] fucking property" several times and called Officer Browning a "fucking bitch" as much as five times. The record indicates that Reeder's unruly, disruptive behavior continued even after Officer Browning told Reeder multiple times to stop. The record also indicates that Reeder's yelling, screaming, cursing, and carrying on caused at least three different families to come out of their respective homes to see what was going on.

{¶ 14} What we find most significant, however, is Officer Browning's own testimony regarding her interactions with Reeder on the morning in question. Specifically, as Officer Browning testified:

> [Reeder] came out of his house yelling about the vehicle being impounded. Asked if – I believe he asked if he could move it, but at that point the tow truck already had it going up on the truck. We can't allow that.
>
> So he continued just screaming and yelling, cursing, calling me names. There were a lot of people starting to gather outside, on porches and stuff. There were three or four different houses, I noticed people outside.
>
> So I had warned him at that point you need to stop yelling and cursing or you're going to be placed under arrest. He continued, and I told him several times, he continued.

And finally I gave him one last warning, say one more thing and you're under arrest, because you can't do that. And he continued, and at that point I went up on his porch, I told him he was under arrest.

{¶ 15} Officer Browning also testified that, rather than the words that Reeder was using, it was instead Reeder's loud yelling and screaming, which included Reeder repeatedly shouting at Officer Browning to "get the fuck off his property," that "it was fucking bullshit," and calling Officer Browning a "fucking bitch," along with Reeder "continuing to behave that way and be[ing] loud and basically draw[ing] the public in" even after being given at least three warnings to stop, that ultimately led to her placing Reeder under arrest for disorderly conduct. When asked, Reeder did not refute any of Officer Browning's testimony, nor did Reeder claim that Officer Browning had testified untruthfully while on the stand. Reeder instead testified that he was merely providing the jury with his "story."

{¶ 16} This evidence, when taken in a light most favorable to the state, was more than sufficient to support Reeder's disorderly conduct conviction under either R.C. 2917.11(A)(2) or (A)(3). This testimony, if believed, also firmly establishes that Reeder's disorderly conduct conviction was not against the manifest weight of the evidence. This is because, as the above facts indicate, this case does not present one of those extraordinary circumstances where the evidence presented at trial weighs heavily in favor of acquittal. We believe this case instead falls under one of those cases where there was overwhelming evidence presented at trial to support a finding of guilt. This holds true despite the fact that Reeder believes he did nothing wrong that would have necessitated this case being initiated in the first place. The jury disagreed, as did the trial court at sentencing, and so do we. Therefore, because we find Reeder's disorderly conduct conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, Reeder's single assignment of error lacks merit and is overruled.

- 8 -

{¶ 17} Accordingly, having overruled Reeder's single assignment of error, Reeder's appeal challenging his conviction for one count of fourth-degree misdemeanor disorderly conduct is denied.

{¶ 18} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.